HYDE *v.* SHINE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

No. 406.   Argued February 21, 23, 1905.—Decided May 29, 1905.

Section 1014, Rev. Stat., authorizes a removal from a judicial district in a State to the District of Columbia. *Benson* v. *Henkel*, 198 U. S. 1.

Where the indictment charges that a conspiracy was entered into in a District, the trial court of that District has jurisdiction of the offense although the overt acts carrying out the conspiracy were committed in another jurisdiction.

While this court does not approve the practice of indicting citizens in courts far distant from their residence if they can be tried in courts of their own jurisdiction, § 1014, Rev. Stat., contains no discrimination based upon

distance and requires the commitment to be made for trial before the court having cognizance of the offense, and in the absence of an exception in the statute the court cannot create one.

Section 23, ch. 35, Comp. Stat. District of Columbia, giving the Criminal Court of the District jurisdiction of all crimes and misdemeanors committed in the District, not lawfully triable in any other court, has reference only to other courts within the District, and was not intended to change the law with respect to the general jurisdiction of courts having jurisdiction of the same offense.

On the facts in this case the indictment which charges a completed conspiracy to defraud the United States by means of obtaining state lands through sales to fictitious persons and then exchanging them for lands of the United States under the forest reserve acts, *held* sufficient notwithstanding that the State received full compensation for the lands.

The States and the United States have power to punish violations of a statute enacted as a part of the public policy even though they may not have suffered any pecuniary damage from such violations.

A patent to a fictitious person is in legal effect no more than a declaration that the Government thereby conveys the property to no one, and in such a case the doctrine that a subsequent *bona fide* purchaser is protected does not apply.

Whether the act charged is or is not a crime is one which the trial court is competent to decide, and, under the circumstances of this case, this court will not review the validity of the indictment upon *habeas corpus.*

While a Federal court on *habeas corpus* may order the petitioner's discharge if there is an entire lack of evidence to support the accusation, where a *prima facie* case is made by the indictment, and the commissioner receives evidence on petitioner's behalf, it is for him to determine whether probable cause existed and the court will not weigh the evidence on *habeas corpus.*

The requirement in § 1014, Rev. Stat., that proceedings for removal shall be agreeable to the usual state procedure, applies to the proceedings for arrest and examination of the accused before the commissioner, but not to subsequent independent proceedings before the Circuit Court on *habeas corpus.*

While the Circuit Court has power to issue a writ of certiorari auxiliary to the writ of *habeas corpus* it is wholly discretionary with it, and its refusal to do so cannot be assigned as error.

THIS is an appeal from an order of the Circuit Court denying the appellant's application for writs of *habeas corpus* and certiorari, and dismissing his petition therefor.

The proceedings which culminated in the arrest and remanding of the appellant originated in an indictment found in the Supreme Court of the District of Columbia against the appellant

and John A. Benson, Henry P. Dimond, and Joost H. Schneider, charging them with a conspiracy, under Rev. Stat. sec. 5440, "to defraud the United States out of the possession and use of and the title to, divers large tracts of the public lands of the United States." All of the defendants except Schneider are residents of San Francisco, California. Upon a complaint made, based upon such indictment, before a United States Commissioner for the Northern District of California, Hyde was arrested under Rev. Stat. sec. 1014, taken before a Commissioner and held to bail to answer the indictment in the sum of $50,000, and in default thereof was committed to the custody of the defendant Shine to await the order of the District Judge for his removal to the District of Columbia, or until he should be discharged by due course of law. Upon such order of removal being issued, *United States* v. *Hyde*, 132 Fed. Rep. 545, appellant presented his petition to the Circuit Court for the Northern District of California, praying for writs of *habeas corpus* and certiorari, and for his discharge from imprisonment, which were denied, and this appeal taken.

*Mr. William B. Hornblower* and. *Mr. Charles C. Cole* for appellant in this case.

*Mr. Frank H. Platt* and *Mr. J. C. Campbell*, with whom *Mr. Charles Page* and *Mr. Samuel Knight* were on the brief, for appellant in No. 410, argued simultaneously herewith.[1]

Section 1014, Rev. Stat., does not authorize a removal to the District of Columbia. *Hornbuckle* v. *Toombs*, 18 Wall. 648, 655; *Goode* v. *Martin*, 95 U. S. 90, 98; *Reynolds* v. *United States*, 98 U. S. 145, 154: *In re Dana*, 7 Ben. 1; *In re Buell*, 3 Dillon, 116; *In re Dana*, 68 Fed. Rep. 889; *United States* v. *Haskins*, 3 Sawyer, 262. It is locally inapplicable to the District of Columbia. *Am. Ins. Co.* v. *Canter*, Fed. Cas. No. 302a; *Hepburn* v. *Ellzey*, 2 Cranch, 445; *Cissel* v. *Mc-Donald*, 16 Blatchf. 150; *United States* v. *Ames*, 95 Fed. Rep. 453. As to the word "district" and how it is used see 9 Am.

---

[1] *Dimond* v. *Shine*, see p. 88, *post.*

& Eng. Ency. of Law, 661; *Kelley* v. *Sanders,* 99 U. S. 441; *Un. Pac. R. R. Co.* v. *Cheyenne,* 113 U. S. 516, 524; *McAllister* v. *United States,* 141 U. S. 174, 180. No general act is applicable to the District of Columbia where there is a specific act in force upon the same subject. *In re Kirk,* 3 Mackey, 116. As to effect of the act of June 22, 1874, see *Re Dana,* 68 Fed. Rep. 901; Cong. Rec., 43d Cong., 2d Sess., vol. 3, Pt. 1, p. 81, and p. 1303; and Sen. Rep. 658.

A person who commits a crime in the District of Columbia may be tried in the District where he is found or is first brought. § 730, Rev. Stat.; *United States* v. *Carr,* 3 Sawyer, 302; *Jones* v. *United States,* 137 U. S. 202; *Cook* v. *United States,* 138 U. S. 157, 182.

The Supreme Court of the District of Columbia has no jurisdiction of the offense charged. § 5440, Rev. Stat.

The conspiracy became complete in California or Oregon and not in the District of Columbia. Under § 730, Rev. Stat., appellant should be tried in California where he was apprehended. *United States* v. *Bird,* 1 Spr. 299; Dist. Col. Code, § 1, 31 Stat. 1189. And if appellant could be tried anywhere else § 1014 does not authorize his removal to the District of Columbia. The same rule applies to cases of extradition. *In re Baldwin,* 29 N. W. Rep. 482; *Carter* v. *Barlow,* 74 N. W. Rep. 745; *Ex parte Johnson,* 167 U. S. 120; *Re Tivnan,* 5 Best & Sm. 645; 1 Kent Com., 10th ed., 186; Wharton, 7th ed., 2960; Moore on Extradition, § 367.

Under this statute the conspiracy is the offense and the overt acts are no part thereof. *United States* v. *Hirsch,* 100 U. S. 33; *United States* v. *Britton,* 108 U. S. 192, 204; *Dealy* v. *United States,* 152 U. S. 539, 546; *Bannon* v. *United States,* 156 U. S. 464; *McKenna* v. *United States,* 127 Fed. Rep. 88; *Gantt* v. *United States,* 108 Fed. Rep. 61; *United States* v. *Watson,* 17 Fed. Rep. 145; *United States* v. *Lancaster,* 4 Fed. Rep. 896; *United States* v. *Gardiner,* 42 Fed. Rep. 829; *United States* v. *Green,* 115 Fed. Rep. 343, 351; *United States* v. *Donan,* 11 Blatchf. 168.

If an overt act was necessary to complete the crime the courts in the District of Columbia would not have jurisdiction as the statute of limitation runs from the commission of the first overt act which was over three years before the indictment. *United States* v. *Owen,* 32 Fed. Rep. 134; *United States* v. *McCord,* 72 Fed. Rep. 159; § 1044, Rev. Stat.; *United States* v. *Hirsch,* 100 U. S. 33. See also *Bannon* v. *United States,* 156 U. S. 464; *United States* v. *Newton,* 52 Fed. Rep. 275; *United States* v. *Watson,* 17 Fed. Rep. 145; *United States* v. *Sacia,* 2 Fed. Rep. 754. *United States* v. *Green,* 115 Fed. Rep. 343, distinguished.

The venue of the alleged conspiracy is improperly laid in the District of Columbia. *United States* v. *Rindskopf,* 6 Biss. 259; act of March 2, 1874, 14 Stat. 471; § 731, Rev. Stat.; *United States* v. *Britton,* 108 U. S. 199; *Pettibone* v. *United States,* 148 U. S. 202; *Dealy* v. *United States,* 152 U. S. 539; *Berkowitz* v. *United States,* 93 Fed. Rep. 452; see also *Commonwealth.* v. *Mactoon,* 101 Massachusetts, 1; *Shaftsbury* v. *Graham,* Skinner, 32; *Smith* v. *Cranshaw,* 2 Rolle, 258; *Regina* v. *Best,* 1 Salk. 174; *King* v. *Brisac,* 4 East Rep. 164.

The courts of the District of Columbia have no jurisdiction of a bare conspiracy committed in California, not to commit a crime, but where the conspiracy itself is the only crime charged. The venue must be not where the conspiracy was but where the result was put in execution.

As the indictment was found in a court not having jurisdiction of the offense it cannot constitute the basis for removal proceedings. The alleged act of conspiracy was committed, if at all, prior to the going into effect of the District Code. See cases, *supra,* and as to a law not having a retrospective operation see *Dodge* v. *Bank,* 109 Fed. Rep. 726; *Dewart* v. *Purdy,* 29 Pa. St. 113; 31 Stat. 5, 1189, 1199, 1436. The indictment is void for not concluding "against the peace and Government of the United States" as required by statute. 2 Stat. 115.

It is the duty of the court to look into the indictment, and if it charges no offense against the United States, or is so es-

sentially and fundamentally defective that a conviction could not be sustained the petitioner should be discharged. *Re Buell,* 3 Dillon, 116; *United States* v. *Fowkes,* 49 Fed. Rep. 50; *Re Corning,* 51 Fed. Rep. 205; *Re Terrell,* 51 Fed. Rep. 213; *Re Green,* 52 Fed. Rep. 104; *Stewart* v. *United States,* 119 Fed. Rep. 89; *United States* v. *Lee,* 84 Fed. Rep. 626; *Re Connors,* 111 Fed. Rep. 734; *Re Huntington,* 68 Fed. Rep. 881; *Re Doig,* 4 Fed. Rep. 193; *Re Palliser,* 136 U. S. 257; *Greene* v. *Henkel,* 183 U. S. 249. *Beavers* v. *Henkel,* 194 U. S. 73, distinguished.

The sufficiency of the charge of a crime is jurisdictional. *In re Nielson,* 131 U. S. 176; *In re Coy,* 127 U. S. 731; *In re Snow,* 120 U. S. 274; *In re Sawyer,* 124 U. S. 200; *Ex parte Bain,* 121 U. S. 1; *In re Ayers,* 123 U. S. 423; *Ex parte Siebold,* 100 U. S. 371; *Ohio* v. *Thomas,* 173 U. S. 276.

The removal of appellant to the District of Columbia would be a violation of his constitutional right to be tried where the alleged offense was committed. Const. U. S., Art. III, § 2 cl. 3, and Amend. VI; Story's Comm. § 1775; *Beavers* v. *Henkel,* 194 U. S. 83; *United States* v. *Burr,* Fed. Cas. No. 14,693. § 731, Rev. Stat., does not aid the prosecution. *Burton* v. *United States,* 196 U. S. 283; 12 Cycl. Law & Pro. 239, nor does § 731 apply to the District of Columbia.

The indictment charges no offense against the United States.

A patent granting public lands, although procured by irregularities or fraud, can not be questioned collaterally, but only by direct proceedings on behalf of the Government to avoid the patent. The patents of the State surrendered to the United States conveyed a legal title which, until attacked directly by the State of California, was good, and so long as the patents remained unassailed the State had no equitable title in the land and the United States got a good title to the land surrendered and was not defrauded. *O'Connor* v. *Trasher,* 56 California, 499; *Doll* v. *Meador,* 16 California, 295, 325; *Thomas* v. *Lawler,* 53 California, 405; *Gale* v. *Best,* 78 California, 235; *Turner* v. *Donelly,* 70 California, 597, 604; *Moore* v. *Wilkinson,* 13 California, 478, 488; *Yount* v. *Howell,* 14 California,

465; *Miller* v. *Dale,* 44 California, 562, 577; *Kentfield* v. *Hayes,* 57 California, 409; *Plummer* v. *Brown,* 70 California, 544; *Chapman* v. *Quinn,* 56 California, 278; *Irvine* v. *Taibal,* 105 California, 242; *Dreyfus* v. *Badger,* 108 California, 58, 64; *Quicksilver Co.* v. *Habeshaw,* 132 California, 115; *Phillips* v. *Carter,* 135 California, 604; *Saunders* v. *La Parissina,* 125 California, 159, 165; *Harrington* v. *Goldsmith,* 13 California, 169. And see especially *Marshall* v. *Bank,* 115 California, 330; *Colorado Coal Co.* v. *United States,* 123 U. S. 307; *United States* v. *Cal. & Ore. Land Co.,* 49 Fed. Rep. 496; *S. C.,* 148 U. S. 31; *United States* v. *Winona &c. R. R. Co.,* 165 U. S. 463, 478; *United States* v. *Chi., M. & St. P. R. R. Co.,* 198 U. S. 385; *People* v. *Swift,* 96 California, 168; *United States* v. *Minor,* 114 U. S. 233, 30 Stat. 34; 26 Stat. 1095; 31 Stat. 1614.

Even though the facts stated might show a conspiracy to defraud a State they cannot by a mere allegation to that effect be converted into a conspiracy to defraud the United States. *United States* v. *Crafton,* 4 Dillon, 145; *Pettibone* v. *United States,* 148 U. S. 197, 207.

The Federal Government was not defrauded as no injury has resulted from appellant's action. Fraud without resulting injury is not actionable. *Irons* v. *Reyburn,* 11 Arkansas, 378; *Otis* v. *Raymond,* 3 Connecticut, 413; *Skrine* v. *Simmons,* 11 Georgia, 401; *Lieveking* v. *Leitzler,* 31 Indiana, 131; *Wharf* v. *Roberts,* 88 Illinois, 426; *Hale* v. *Philbrick,* 47 Iowa, 217; *Brown* v. *Blunt,* 72 Maine, 415; *Fuller* v. *Hodgdon,* 25 Maine, 243; *Morgan* v. *Bliss,* 2 Massachusetts, 111; *Johnson* v. *Seymour,* 79 Michigan, 156; *Alden* v. *Wright,* 47 Minnesota, 225; *Lorenson* v. *Kansas City Co.,* 44 Nebraska, 99; *Weaver* v. *Wallace,* 9 N. J. L. 251; *Dung* v. *Parker,* 52 N. Y. 494; *Aron* v. *Delastro,* 13 N. Y. Supp. 372; *Slaughter* v. *Gerson,* 13 Wall. 379; *Marshall* v. *Hubbard,* 117 U. S. 415.

The evidence before the commissioner proved that there was no probable cause for believing him to be guilty and *habeas corpus* and certiorari should have been granted and petitioner discharged. That would have been in accordance with the Pe-

nal Code of California, of which see §§ 864, 1473, 1487 *et seq.*, and see also § 1014, Rev. Stat. As to the right of the prisoner to have the court consider probable cause in California see *People v. Smith*, 1 California, 9; *Re Troia*, 64 California, 154; *Ex parte Palmer*, 86 California, 631; *Ex parte Walpole*, 85 California, 372. As to the right of the court to issue the writ of certiorari see *Re Martin*, 5 Blatchf. 302; *Ex parte Bollmann*, 4 Cranch, 114, 125; *Greene* v. *Henkel*, 183 U. S. 249, 259; *United States* v. *Greene*, 100 Fed. Rep. 941; *Otieza* v. *Jacobus*, 136 U. S. 330; *Bryant* v. *United States*, 167 U. S. 104.

*The Solicitor General* and *Mr. Francis J. Heney*, Special Assistant to the Attorney General, with whom *Mr. Arthur B. Pugh*, Special Assistant United States Attorney, was on the brief, for the United States:

An indictment found by a grand jury of a court having jurisdiction of the offense should be accepted everywhere in the United States as *prima facie* evidence of probable cause. *Greene* v. *Henkel*, 183 U. S. 249, 261; *Beavers* v. *Henkel*, 194 U. S. 73, 87; § 1025, Rev. Stat. The Supreme Court of the District of Columbia has jurisdiction of the offense charged in the indictment. 30 Stat. 1189; §§ 61, 83, Code Dist. Col.

Section 1641 of the Code does not apply to matters of jurisdiction. The words "not lawfully triable in any other court" in § 23, ch. 35, Comp. Stat. Dist. of Col., 18 Statutes, 193, refer only to other courts in the District of Columbia and not to courts outside of that District. *Callan* v. *Wilson*, 127 U. S. 540.

Not only the conspiracy, but also overt acts in furtherance thereof, are charged to have been committed in the District of Columbia. The illegal agreement is the crime. *People* v. *Mather*, 4 Wend. (N. Y.) 229; *Commonwealth* v. *Bartilson*, 85 Pa. St. 482, 489; 6 Am. & Eng. Ency. Law, 844; *United States* v. *Rindskopf*, Fed. Cas. No. 16,165; *Fire Ins. Co.* v. *Mississippi*, 75 Mississippi, 24; *People* v. *Willis*, 52 N. Y. 808. § 730, Rev. Stat., does not apply.

The facts narrated and acts charged in the indictment con-stitute an offense against the United States, and it is not com-petent upon *habeas corpus* proceedings to determine this. *Horner* v. *United States*, 143 U. S. 570, 577; *Ex parte Rickelt*, 61 Fed. Rep. 203.

The Commissioner and the district judge having jurisdiction both of the subject matter and of the person have determined these questions against appellant and the writ of *habeas corpus* cannot be used as a writ of error. *Stevens* v. *Fuller*, 136 U. S. 468, 477; *Re Oteiza*, 136 U. S. 330; *Ex parte Yarbrough*, 110 U. S. 651; *Ex parte Parks*, 93 U. S. 18. Whether the offense was committed is for the trial court to decide. *Ex parte Siebold*, 100 U. S. 371.

The acts charged are immoral and such as might have been included in § 5440, Rev. Stat., and it is not clear and manifest that the indictment does not state an offense against the United States.

As to the policy of United States in regard to forest reserves see § 24, act of March 3, 1901, 26 Stat. 1095, 1103; act of June 4, 1897, 30 Stat. 11, 36; act of June 6, 1900, 31 Stat. 588, 614.

The purposes of this legislation were to preserve the remain-ing forests on the public lands and to improve and protect the forests within the reservations, for the purpose of securing conditions favorable to continuous water flows, and to a perma-nent supply of timber for the use and necessities of citizens of the United States. Manifestly, the Government would be greatly aided in accomplishing these objects by securing ex-clusive ownership and control of all lands within the reserva-tions. To this end the act of June 4, 1897, was passed. It contains an offer by the Government to exchange any of its lands that are vacant and open to settlement for a like quantity of lands within a forest reservation, covered either by an unperfected *bona fide* claim or by a patent. In the administra-tion of the act the Land Department has construed the words " covered by a patent " to embrace any tract of land as to which the absolute fee simple title has passed out of the United States

by any means which is the full legal equivalent of a patent. *Hyde's case,* 28 L. D. 284, 290; Instructions, 28 L. D. 328, 329; 29 L. D. 594, 596; *Gray Eagle Oil Co.* v. *Clarke,* 30 L. D. 570.

Under acts of Congress making grants of school lands to the various States the title to such lands (usually sections 16 and 36, as in the States of California and Oregon), passes by the grant, upon identification of the lands by survey, and therefore patents of the United States are not necessary to convey such title. *Cooper* v. *Roberts,* 18 How. 173; *Beecher* v. *Wetherby,* 95 U. S. 517, 524, 525; *Heydenfeldt* v. *Daney Gold Mining Company,* 93 U. S. 634; *McCreary* v. *Haskell,* 119 U. S. 327, 331. This principle has been followed by the Land Department in the administration of the act of June 4, 1897. It has been uniformly held that surveyed school lands within forest reserves are embraced within the meaning of the words " covered by a patent " as used in said act. See statutes of California providing for disposal of school lands, §§ 3495, 3500, Political Code, and as to Oregon see § 3617, 2 Hill's Ann. Laws, 1887.

In California an applicant to purchase state lands must set out in his affidavit all the facts required by the statute to be stated therein, and as to all such facts the affidavit must be true or the proceedings will be invalid. *Taylor* v. *Weston,* 77 California, 534, 535; *Harbin* v. *Burghart,* 76 California, 119; *Mosely* v. *Torrence,* 71 California, 318; *Wrinkle* v. *Wright,* 136 California, 491; *McKenzie* v. *Brandon,* 71 California, 209, 211; *Plumm* v. *Woodruff,* 72 California, 29; *Davidson* v. *Cucamongo Co.,* 78 California, 4; *McIntyre* v. *Sherwood,* 82 California, 139; *Jacobs* v. *Walker,* 90 California, 43.

The same rule prevails in Oregon. *State* v. *Carlson,* 40 Oregon, 565; *Warren* v. *De Force,* 34 Oregon, 168; *Shively* v. *Pennoyer,* 27 Oregon, 33.

The facts narrated constitute an offense against the United States under § 5440, because the United States would receive absolutely nothing of value, and would be induced to part with apparent record titles to its public lands, under which apparent record titles possession of the lands would be held for an

indefinite period of time. Land patents issued to fictitious persons convey no title and are absolutely void. *Moffat* v. *United States*, 112 U. S. 24, 31.

By the consummation of the scheme, the Government would be defrauded out of the possession and use of lands covered by such apparent record titles, obtained by deception and fraud, for an indefinite period of time, to wit, until the fictitious character of its own patentees would be discovered. Until such discovery, those claiming under such apparent record titles would hold the possession of lands really belonging to the United States, and would appropriate and use the same, and the timber thereon, for their own benefit, and to the injury, detriment, and pecuniary loss of the Government. It is just as much an offense under § 5440 to defraud the United States out of the possession and use of its public lands as it is to defraud it out of the title to such lands. As to each and all of the elements or parts of the alleged conspiracy, it is charged in the indictment that the object and purpose thereof were to defraud the United States out of the possession and use of its public lands as well as out of the title thereto. *United States* v. *Thompson*, 29 Fed. Rep. 86.

The Government holds its public lands as a part of its trust; that is, as trustee for the people of the United States, *United States* v. *Beebe*, 127 U. S. 338, 342; *Knight* v. *U. S. Land Association*, 142 U. S. 161, 177; *McDaid* v. *Oklahoma*, 150 U. S. 209, 215; and, by the consummation of the scheme under consideration, the people would be defrauded out of their right under the public land laws to secure title to the particular lands covered by such apparent record titles until the discovery of the fictitious character of the patentees.

As to who is an " owner " see Anderson's and Bouvier's Law Dictionaries; *Johnson* v. *Crookshanks*, 21 Oregon, 339; *Fallbrook Irrigation District* v. *Abila*, 106 California, 355; *Rockford Ins. Co.* v. *Nelson*, 65 Illinois, 415; *McFeters* v. *Pierson*, 15 Colorado, 201. The owner must have the absolute fee simple title to come under the rules of the Land Office. Par. 16,

Instr., June 30, 1897, 24 L. D. 589; 31 L. D. 374, par. 14; *Kern Oil Co.* v. *Clarke*, 30 L. D; 550, 560; *Cosmos Exploration Co.* v. *Gray Eagle Oil Co.*, 190 U. S. 301, 308.

The acts were committed with intent to deceive and the defendants are guilty of fraud and deceit. *Stewart* v. *Wyoming Ranch Co.*, 128 U. S. 383; *United States* v. *Fox*, 95 U. S. 670; *United States* v. *Whalen*, Fed. Cas. No. 16,669; *Mitchell* v. *Kintzer*, 5 Pa. St. 216; *Bunn* v. *Ahl*, 29 Pa. St. 387; 14 Am. & Eng. Ency. of Law, 2d ed., 140; *United States* v. *Bunting*, 80 Fed. Rep. 883; *United States* v. *Curley*, 122 Fed. Rep. 738; *S. C.*, 131 Fed. Rep. 1; *Tyner* v. *United States*, 32 Wash. Law Rep. 258.

Procuring patents from the United States for its public lands by fraudulent representations to the legally constituted authorities, or by concealing from such authorities facts which if known would have defeated the issuance of the patents, is a fraud upon the United States. *United States* v. *Beebe*, 127 U. S. 338, 342; *Colorado Coal Company* v. *United States*, 123 U. S. 307, 313; *United States* v. *Trinidad Coal and Coking Company*, 137 U. S. 160.

While defendant's acts in fraudulently acquiring school lands from the States of California and Oregon, alone considered, or if disconnected from any purpose on the part of the defendants to exchange the lands so acquired, for public lands of the United States, would not constitute an offense against the United States, those acts constitute one of the links in the chain of which the conspiracy to defraud the United States is composed.

By tendering to the United States, in exchange for its public lands, the titles obtained by fraudulent practices from the States of California and Oregon for the sole purpose of making such exchange, the defendant has been guilty of an attempt to defraud the United States. Moreover, the same act or series of acts may constitute an offense equally against the United States and against the State, and subject the guilty party to punishment under the law of each government.

*United States* v. *Marigold*, 9 How. 560, 569; *Cross* v. *North Carolina*, 132 U. S. 131; *Fox* v. *Ohio*, 5 How. 410, 433; *Moore* v. *Illinois*, 14 How. 13, 19; *Ex parte Siebold*, 100 U. S. 371, 390.

The indictment charges that the object of the conspiracy was to defraud the United States out of the possession and use of its public lands as well as out of the title to such lands. One who accepts the Government's offer to exchange lands under the act of 1897 becomes vested with the equitable title to the public lands which he selects, as soon as he has complied with all the requirements necessary to entitle him to a United States patent therefor and has secured the approval of his selection by the Land Department. *Kern Oil Co.* v. *Clarke*, 30 L. D. 550, 556; *S. C.*, 31 L. D. 288; *Kern Oil Co.* v. *Clotfelter*, 30 L. D. 583; *Cosmos Co.* v. *Gray Eagle Oil Co.*, 190 U. S. 301, 312. See also as to point of time when equitable interest vests in party seeking to acquire patent to public lands, *Carroll* v. *Safford*, 3 How. 441, 446; *Witherspoon* v. *Duncan*, 4 Wall. 210, 218; *Stark* v. *Starrs*, 6 Wall. 402; *Barney* v. *Dolph*, 97 U. S. 652, 656; *Wirth* v. *Branson*, 98 U. S. 118; *Simmons* v. *Wagner*, 101 U. S. 260; *Benson Mining Co.* v. *Alta Mining Co.*, 145 U. S. 428.

The rule of *bona fide* purchaser is the creation of courts of equity, and is enforced solely for the purpose of protecting that one of two innocent parties who is least to blame when one of them must suffer loss. It is never enforced for the protection of a guilty person. The rule was not adopted for the protection of swindlers. *Riggs* v. *Palmer*, 115 N. Y. 506.

A further element of the conspiracy as charged in the indictment is bribery of public officials.

The other counts in the indictment are in the same form as the first, except that they refer to the first for a general description of the several conspiracies. Each count charges a separate conspiracy, and the defendants might be found guilty on one or more counts and not guilty as to other counts. The indictment as a whole makes the full record of the offense for which the conviction was asked, and would be ample pro-

tection to the defendants as against other prosecutions. *Blitz*
v. *United States,* 153 U. S. 108; *Peters* v. *United States,* 94 Fed.
Rep. 127; Wharton's Cr. Law, 154; Chitty's Criminal Law, 250.
Should the indictment be considered too general, as to this or
any other charge, a bill of particulars at the trial would supply
all the necessary details. Wharton's Cr. Pr. § 702; *Durland*
v. *United States,* 161 U. S. 306, 315; *Rosen* v. *United States,*
161 U. S. 29; *Tubbs* v. *United States,* 105 Fed. Rep. 59; *Mc-
Knight* v. *United States,* 97 Fed. Rep. 208, 213.

Section 1014, Rev. Stat., authorizes a removal to the Dis-
trict of Columbia. *Benson* v. *Henkel,* 198 U. S. 1. To con-
strue the section otherwise would produce absurd and mis-
chievous results which should be avoided. Maxwell on Inter-
pretation, 179; Sutherland, Stat. Construction, § 323; *Lau Ow
Bew* v. *United States,* 144 U. S. 47, 59.

MR. JUSTICE BROWN, after making the foregoing statement,
delivered the opinion of the court.

The petitioner assigns as error—

1. That Rev. Stat. sec. 1014 does not authorize a removal
from a judicial district in a State to the District of Columbia;

2. That the Supreme Court of the District of Columbia has
no jurisdiction over the alleged offense charged in the indict-
ment;

3. That the indictment charges no offense against the United
States;

4. That the evidence introduced before the Commissioner
proved that there was no probable cause for believing him
guilty of the offense, and that the writ of certiorari should
have been issued to bring the record before the court, and upon
its inspection the appellant should have been discharged.

1. The first assignment is practically disposed of by the
recent case of *Benson* v. *Henkel,* 198 U. S. 1, in which one of
the co-defendants of the petitioner in this case, who had been
arrested in Brooklyn, was held to be properly removed to the

District of Columbia under Rev. Stat. sec. 1014. No additional considerations being presented, that case must be treated as controlling.

2. The second assignment, that the Supreme Court of the District of Columbia had no jurisdiction of the alleged offense, is based upon the proposition that the conspiracy, if any existed, was entered into either in the Northern District of California or the District of Oregon, and that nothing but overt acts in pursuance of the conspiracy were done in the District of Columbia. Granting that the *gravamen* of the offense is the conspiracy, and that at common law it was neither necessary to aver nor prove an overt act, *Rex* v. *Gill*, 2 B. & Ald. 204; *Bannon* v. *United States*, 156 U. S. 464, 468, an overt act is necessary under Rev. Stat. sec. 5440 to complete the offense. The language of the section is, "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable," etc.

It was aptly said by Mr. Justice Woods in *United States* v. *Britton*, 108 U. S. 199, 204, that the offense consisted in the conspiracy, and that the overt act afforded a *locus pœnitentiœ*, so that before the act done either one or all of the parties may abandon their design, and thus avoid the penalty prescribed by the statute. As the indictment in this case charges that the conspiracy was entered into in the city of Washington, it becomes unnecessary to consider whether an indictment will lie within the jurisdiction where the overt act was committed, though there are many authorities to that effect. *King* v. *Brisac*, 4 East Rep. 164; *People* v. *Mather*, 4 Wend. (N. Y.) 229; *Commonwealth* v. *Gillespie*, 7 S. & R. 469; *Noyes* v. *State*, 41 N. J. Law, 418; *Commonwealth* v. *Corlies*, 3 Brews. (Pa.) 575.

We have ourselves decided that, if the conspiracy be entered into within the jurisdiction of the trial court, the indictment will lie there, though the overt act is shown to have been com-

mitted in another jurisdiction, or even in a foreign country. *Dealy* v. *United States,* 152 U. S. 539; *In re Palliser,* 136 U. S. 257; *King* v. *Brisac,* 4 East Rep. 164; Rev. Stat. § 731.

In this connection it is also suggested that, as the conspiracy is alleged in all the counts to have been entered into prior to January 1, 1902, as well as the overt act charged in fifteen of the counts, the Supreme Court of the District of Columbia cannot take cognizance of the case under the new code which took effect upon that date, and that we must look to the law prior thereto to determine the jurisdiction of that court. By section 23, Chap. 35, of the Compiled Statutes of the District of Columbia, it was enacted that " the Criminal Court of the District of Columbia shall have jurisdiction of all crimes and misdemeanors committed in said District, *not lawfully triable in any other court,* and which are required by law to be prosecuted by indictment or information."

The argument is made that, as the conspiracy in this case was triable in California or Oregon, as well as in the District of Columbia, it was lawfully triable in another court, and hence the Supreme Court of the District of Columbia has no jurisdiction. We are not impressed with the force of this contention. Chapter 35 provides for the organization of the judiciary of the District of Columbia, and relates exclusively to the jurisdiction and powers of the several courts of the District, providing that one of the justices may hold a Criminal Court, and that such court shall have jurisdiction of all crimes and misdemeanors *committed in said District* not lawfully triable in any other court, and which are required by law to be prosecuted by indictment or information. It is entirely clear that this has reference only to other courts within the District, and was not intended to change the law with respect to the general jurisdiction of courts having jurisdiction of the same offense.

Although it involves a seeming hardship to commit an accused person in San Francisco for trial in the District of Columbia, the terms of Rev. Stat. § 1014 are as applicable to such a case as they would be if the arrest were made in Balti-

more. · The section makes no discrimination based upon distance, and requires the commitment to be made for trial before the court having cognizance of the offense, wherever that court may sit. Where the statute contains no exception, the courts cannot create one. Indeed, the Constitution itself requires that the trial of all crimes shall be held in the State where the crimes have been committed, and the power of Congress to order the surrender of accused persons from other States is a necessary complement to the duty of trying offenses in the jurisdiction where the crime was committed. But we do not wish to be understood as approving the practice of indicting citizens of distant States in the courts of this District, where an indictment will lie in the State of the domicil of such person, unless in exceptional cases where the circumstances seem to demand that this course shall be taken. To require a citizen to undertake a long journey across the continent to face his accusers, and to incur the expense of taking his witnesses, and of employing counsel in a distant city, involves a serious hardship to which he ought not to be subjected, if the case can be tried in a court of his own jurisdiction. ·

3. The third assignment—that the indictment charges no offense against the United States—requires a statement of its substance. As it contains forty-two different counts and covers some ninety-four pages of printed matter, a consideration of each count would unnecessarily prolong this opinion. The conspiracy charged embraced certain false practices by the defendants, whereby school lands were to be obtained fraudulently from the States of California and Oregon by Hyde and Benson, (1) in the names of fictitious persons, and (2) in the names of persons not qualified to purchase the same, whereby the said Hyde and Benson were to cause and require such school lands to be relinquished by means of false and forged relinquishments, assignments and conveyances to the United States, in exchange for public lands to be selected, and for titles thereto by patents to be obtained by and on behalf of the said Hyde and Benson. A further element of the con-

spiracy is that defendants were, by bribery, to induce certain United States officials in the General Land Office at Washington, in the District of Columbia, corruptly and contrary to their official duties, to aid defendants to secure the approval of their fraudulent selections, in advance of their regular order, and to inform defendants of any discovery or investigation by the Government of their said fraudulent practices.

To grasp the significance of these somewhat complicated counts, and to appreciate the details of the offense charged, it should be borne in mind that the Government had granted to California and Oregon large tracts of lands, many of which were covered with forests, known as school lands. Congress subsequently changed its intention with regard to them and desired to retain them as forest reserves, and to reacquire the title thereto, and for that purpose, enacted a law approved June 4, 1897, 30 Stat. 11, 36, as follows:

"That in cases in which a tract covered by an unperfected *bona fide* claim or by a patent is included within the limits of a public forest reservation, the settler or owner thereof may, if he desires to do so, relinquish the tract to the Government, and may select in lieu thereof a tract of vacant land open to settlement not exceeding in area the tract covered by his claim or patent; and no charge shall be made in such cases for making the entry of record or issuing the patent to cover the tract selected."

It seems that both of these States had passed laws by which any citizen of the United States resident in such State, or any person who had declared his intention to become a citizen, might acquire from such States a section or half section of such lands at $1.25 per acre. They were required to make application to the land offices of the State, and to make the necessary affidavits to show that they were qualified to purchase them, and that they were purchasing them for their own use or benefit, and had not sold or agreed to sell the same. Doubtless the intention was that the sale should be made to persons who desired to settle upon the lands, but there was

nothing to prohibit such persons from afterwards disposing of them by assigning the certificates of purchase, and in this method the assignee might, by purchase from several patentees, acquire title to an unlimited amount of such lands, and might thereafter exchange such lands under the act of June 4, 1897, with the United States, provided he had acquired a valid title from the States, and convey the same to the United States in lieu of the land to be granted by the Government.

The argument of the defendants that while the procuring of these school lands from the States through persons who were not qualified to purchase them, and did not desire to purchase them for their own use, and by supporting their application by false affidavits and forged assignments of the certificates of purchase, might have been a violation of the policy of the States of California and Oregon, and a fraud upon such States, it fails to show that the United States could in any way have been defrauded. The argument assumes that the title acquired by the defendants from the States in question was such a title as, upon conveyance to the United States, would vest in the latter a title good as against all the world, and therefore that the United States was not defrauded.

While it is doubtless true that, by means of these corrupt and fraudulent practices, Hyde and Benson may have obtained titles to these lands, it does not follow that the States might not have disaffirmed such titles and recovered the lands. In this particular the case is covered by that of *Moffat* v. *United States*, 112 U. S. 24. Nor does it follow that, when subsequent conveyances were made to the United States of these lands under the act of June 4, 1897, a good title was vested in the grantee. In the *Moffat case* it was held that a patent issued to a fictitious person conveys no title which can be transferred to a person subsequently purchasing in good faith from a supposed owner. In delivering the opinion of the court, Mr. Justice Field observed: "The patents being issued to fictitious parties could not transfer the title, and no one could derive any right under a conveyance in the name of the

supposed patentees. A patent to a fictitious person is, in legal effect, no more than a declaration that the Government thereby conveys the property to no one. There is, in such case, no room for the application of the doctrine that a subsequent *bona fide* purchaser is protected. A subsequent purchaser is bound to know whether there was, in fact, a patentee, a person once in being, and not a mere myth, and he will always be presumed to take his conveyance upon the knowledge of the truth in this respect. To the application of this doctrine of a *bona fide* purchaser there must be a genuine instrument, having a legal existence, as well as one appearing on its face to pass the title. It cannot arise on a forged instrument or one executed to fictitious parties, that is, to no parties at all, however much deceived thereby the purchaser may be."

The argument that this indictment cannot be sustained because the United States, having received the school lands in lieu of the lands patented, were defrauded of nothing, if valid at all, applies equally to the school lands for which the States of California and Oregon must have received a statutory compensation, fixed at $1.25 per acre. Having received this compensation it may be said, with equal propriety, that they were defrauded of nothing. The result of the argument then is that, although a gross imposition was practiced upon the States, by the procuring of patents in favor of fictitious persons or of disqualified persons by the use of forged affidavits, assignments or other documents, no indictment therefor would lie because the States had received the same consideration they would have received had the patents been issued to persons qualified under the statutes to purchase the lands. The unsoundness of this argument needs no demonstration. The States have a right to punish a violation of a statute enacted as part of its public policy, notwithstanding they may have suffered no pecuniary damage therefrom.

The same argument applies to the United States whose lands have been procured in plain violation of the spirit, if not the letter, of the statute, and by a further step in the same fraudu-

lent scheme. By the act of June 4, 1897, 30 Stat. 36, it is
provided that any case in which a tract is covered by an un-
perfected *bona fide* claim, or by a patent, is included within
the limits of a public forest reservation, the *settler* or *owner*
thereof may, if he desires to do so, relinquish the tract to the
Government, etc. The privilege of the act is therefore re-
served to a settler or owner, and as there is no claim that Hyde
was a settler upon the lands, it only remains to consider whether
he was an "owner" within the act. Although the word owner
has a variety of meanings and may, under certain circum-
stances, include an equitable as well as a legal ownership, or
even a right of present use and possession, it implies something
more than a bare legal title, and we know of no authority for
saying that a person in possession of land under a void deed
can be regarded as the owner thereof. Ownership may not
imply a perfect title, but it implies something more than the
possession of land under a title which is void; and when the
Government holds out to owners of lands an inducement to
relinquish such lands in exchange for others, it implies that
the persons with whom it is dealing, if not the owners in fee
simple, are at least *bona fide* owners, with authority to dispose
of and vest a good title thereto. We are clear that the de-
fendant does not fall within this category and that the United
States may justly claim to have been defrauded out of the land
patented to him. *Cosmos Exploration Co.* v. *Gray Eagle Oil
Co.*, 190 U. S. 301, 308; *Johnson* v. *Crookshanks*, 21 Oregon,
339; *Directors &c.* v. *Abila*, 106 California, 355.

Whatever may be the rule in equity as to the necessity of
proving an actual loss or damage to the plaintiff, we think a
case is made out under this statute by proof of a conspiracy to
defraud and the commission of an overt act, notwithstanding
the United States may have received a consideration for the
lands and suffered no pecuniary loss. *MacLaren* v. *Cochran*,
44 Minnesota, 255. The law punishes the false practices by
which the lands were obtained, and the question whether the
Government stands in the position of a *bona fide* purchaser

with respect to the school lands is not one which can be litigated in a criminal prosecution for a violation of law.

Even if the United States were in a position to claim the rights of a *bona fide* purchaser to the state lands, the methods by which these lands were acquired from the States, and the lands in exchange therefor procured from the United States, would be none the less a fraud of which the latter might take advantage in a criminal prosecution. The indictment under section 5440 charges a conspiracy to defraud the United States out of the possession, use of and title thereto of divers large tracts of public lands, and if the title to these lands were obtained by fraudulent practices and in pursuance of a fraudulent design, it is none the less within the statute, though the United States might succeed in defeating a recovery of the state lands by setting up the rights of a *bona fide* purchaser. Under the circumstances it cannot be doubted that the United States might maintain a bill to cancel the patents to the exchanged lands procured by these fraudulent means, notwithstanding its title to the forest reserve lands might be good.

Other minor objections are taken to the indictment; that no description is given of the lands out of which the defendants are alleged to have conspired to defraud the Government, *Dealy* v. *United States,* 152 U. S. 539, 543; that it is uncertain in its allegations as to the means to be used to carry out the alleged conspiracy; that the names representing the fictitious persons and of those not qualified to purchase, through whom the fraud was effected, are not given; that the allegations of the indictment are indefinite and inconsistent; that the conclusion is improper, etc.

It is sufficient to say of these objections that they are proper to be considered by the trial court, and that we do not feel called upon to express our own opinion in regard to them. Criticisms of this character are completely covered by the recent decision of this court in *Benson* v. *Henkel,* 198 U. S. 1, as well as in the cases of *Ex parte Watkins,* 3 Pet. 193, 206, and *Ex parte Parks,* 93 U. S. 18, in both of which the petitioners sought

by writs of *habeas corpus* to review the validity of certain indictments under which they had been convicted in the courts below and in both this court declined to review the action of the court below. It was held that the question whether the act charged was or was not a crime was one which the trial court was competent to decide, and which this court would not review upon a writ of *habeas corpus*.

Our conclusion is that for the purposes of this case the indictment is sufficient.

4. The fourth assignment—that there was no probable cause for believing the petitioner guilty of the offense charged and that the writ of certiorari should have been issued to bring the record before the court—is based upon that clause of section 1014, which requires that proceedings for the removal of persons from one district to another shall be "agreeably to the usual mode of process against offenders in such State," and section 1487 of the code of California is cited to the effect that the petitioner shall be discharged where he has been committed upon a criminal charge without reasonable or probable cause. Certain cases are also cited from the Supreme Court of California, to the effect that it is the right of the prisoner to have the court consider the question of probable cause upon the writ of *habeas corpus*. *People* v. *Smith,* 1 California, 9; *Ex Parte Palmer,* 86 California, 631; *Ex Parte Walpole,* 85 California, 362. But see *contra Ex Parte Long,* 114 California, 159.

In the Federal courts, however, it is well settled that upon *habeas corpus* the court will not weigh the evidence, although if there is an entire lack of evidence to support the accusation the court may order his discharge. In this case, however, the production of the indictment made at least a *prima facie* case against the accused, and if the Commissioner received evidence on his behalf it was for him to say whether upon the whole testimony there was proof of probable cause. *In Re Oteiza,* 136 U. S. 330; *Bryant* v. *United States,* 167 U. S. 104. The requirement that the usual mode of process adopted in the State shall be pursued refers to the proceedings for the

arrest and examination of the accused before the Commissioner, but it has no bearing upon the subsequent independent proceeding before the Circuit Court upon *habeas corpus*. In this case the Commissioner did receive evidence on behalf of the appellants, and upon such evidence found the existence of probable cause and committed the defendants, and upon application to the District Judge for the warrant of removal he reviewed his action, but did not pass upon the weight of the evidence.

While the Circuit Court may have had power to issue a writ of certiorari auxiliary to the writ of *habeas corpus*, *Ex Parte Burford*, 3 Cranch, 448; *In Re Martin*, 5 Blatch. 303; *Ex Parte Bollman*, 4 Cranch, 75, 100; Church on Habeas Corpus, sec. 260, it was under no obligation to do so, and its refusal cannot be assigned as error. Certiorari is a discretionary writ, and is often denied where the power to issue it is unquestionable. *People* v. *Supervisors*, 15 Wend. 198, 206; *People* v. *Stilwell*, 19 N. Y. 531; *Rowe* v. *Rowe*, 28 Michigan, 353. Petitions for *habeas corpus* are frequently accompanied by applications for certiorari as ancillary thereto, and both are awarded or denied together. Appellant had nothing to complain of in the denial of the writ, and his petition should have set forth the evidence relied upon to show a want of probable cause. *Terlinden* v. *Ames*, 184 U. S. 270, 279; *Craemer* v. *Washington*, 168 U. S. 124, 128.

There was no error in the action of the Circuit Court, and its judgment is therefore

*Affirmed.*

MR. JUSTICE PECKHAM, with whom concurred MR. JUSTICE WHITE and MR. JUSTICE McKENNA, dissenting.

I dissent from the opinion and judgment of the court in this case, and wish simply to state the grounds of my dissent without any attempt to do more. The indictment avers that the

conspiracy was entered into in Washington, District of Columbia, on December 30, 1901, and the opinion holds, in substance (and rightly, as I think), that it is essential to aver its information in the District in order to give the courts therein jurisdiction of the offense. The indictment constitutes *prima facie* evidence of probable cause, but evidence may be given to rebut it. It is averred in the application for the writs of *habeas corpus* and certiorari, in the case of Hyde, that the evidence taken before the Commissioner showed indisputably that the petitioner was never in the District of Columbia, except upon one occasion in 1901, and then only for about six hours, and that he was not then guilty of any of the offenses charged in the indictment; and in the case of Dimond, it was said the evidence showed that the transactions complained of as a conspiracy occured in California or Oregon, of which former State the defendant was, and had been for twenty years, a resident. In other words, it was claimed that the evidence before the Commissioner showed conclusively and without contradiction that there was no probable cause to believe the defendants guilty of any offense, as charged in the indictment. The writ of certiorari was called for in order that this evidence might be brought before the Circuit Judge, so that he could see from it that there was affirmative and conclusive proof of the absence of probable cause. The applications for the writs of *habeas corpus* and of certiorari were both denied. The opinion of the Circuit Judge, delivered upon refusing the writs, shows that the question of the want of probable cause to believe the defendants guilty, based upon the absence of both defendants from the District of Columbia at the time of the alleged formation of the conspiracy, was not touched upon by him, but the objections considered were those based upon the charge contained in the indictment, and whether it charged an offense under the laws of the United States. This court now holds that the refusal of the judge to grant the writ of certiorari was within his discretion.

I think this is not the case for the application of the rule

stated in the cases cited in the opinion of the court. Those from New York were based upon a matter of public policy, where the purpose was to overturn proceedings in assessments and taxation, in which the public was interested, and the courts refused in such cases to grant the writ. The result of the refusal in this case is to prevent the review of the findings of the Commissioner before whom the original proceeding was had, upon the question of probable cause. I admit that the weight of evidence will not in such cases be reviewed here, but evidence which conclusively rebuts the presumption of probable cause arising from the indictment and which is uncontradicted, may be looked at, and a finding of probable cause reversed. In order to refer to it the evidence must be part of the record, and in such a case as this the application for a writ of certiorari to bring up the evidence which the petitioner avers shows such fact is not addressed to the discretion of the court, but on the contrary the petitioner has the right to demand that it shall be granted. The right is none the less, when the want of probable cause rests upon conclusive evidence of the absence of the defendants from the district at the time when the indictment alleges the conspiracy was formed in such district. If defendants were not then there, they could not be guilty of the crime charged in the indictment. This case is an extreme illustration of the very great hardship involved in sending a man 3,000 miles across the continent, from California or Oregon, to this District for trial, where he is to bring his witnesses, and where on such trial it will appear that the court must direct an acquittal, because the averment of the formation of the conspiracy at Washington, D. C., is shown to be false to a demonstration.

The expense to a defendant in his necessary preparation for trial, and in procuring the attendance of witnesses in his behalf from such a distance, must necessarily be enormous, and in many, if not in most cases, utterly beyond the ability of a defendant to pay. The enforcement of the criminal law should not be made oppressive in such cases, and, therefore, when it

appears there was no probable cause to found the indictment upon, the order of removal should be refused.

I am authorized to say that MR. JUSTICE WHITE and MR. JUSTICE MCKENNA concur in this dissent.