## GRAYSON et al. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. April 15, 1921.)

No. 3470.

1. **Conspiracy �köö27, 43(5)—Shipment which is overt act of conspiracy to transport liquors for beverages need not be alleged for beverage purposes.**

In an indictment charging conspiracy, under Criminal Code, § 37 (Comp. St. § 10201), to violate the Reed Amendment (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a), by transporting for beverage purposes intoxicating liquors into a state where the sale of such liquors for that purpose was prohibited, it is not necessary to charge that the transportation alleged as the overt act was for beverage purposes, since the overt act need not be in itself criminal.

2, 3. **Criminal law ⊝⊃564(3)—Evidence held to support inference conspiracy was formed at the place alleged.**

Evidence that defendants lived at the place where it was alleged the conspiracy to transport intoxicating liquors into the state was formed, and that such place was the headquarters for their illicit liquor business, is sufficient to support an inference that the conspiracy was formed at that place.

4. **Criminal law ⊝⊃113—Prosecution for conspiracy may be brought, where conspiracy was formed or overt act was committed.**

Under Const. Amend. 6, giving accused the right to a trial in the district where the crime was committed, and Judicial Code, § 42 (Comp. St. § 1024), providing that an offense begun in one district and completed in another may be tried in either district, prosecutions for conspiracy under Criminal Code, § 37 (Comp. St. § 10201), may be maintained either in the district in which the conspiracy was formed or in any district in which an act was done to effectuate its object.

5. **Conspiracy ⊝⊃27—Interstate transportation of liquor sufficient overt act of conspiracy, though not completed offense.**

Where the conspiracy alleged was to transport intoxicating liquors from other states into Georgia, where its sale was prohibited, a transportation of liquor from Kentucky and Ohio into Tennessee, where it was seized by the officers, was a sufficient overt act to sustain the conviction, though such transportation was not an offense under the Reed Amendment.

6. **Criminal law ⊝⊃1144(15)—Jury presumed to have found in accordance with undisputed evidence.**

In a prosecution for conspiracy, where there was undisputed evidence establishing an act which was clearly an overt act in furtherance of the conspiracy, it will be presumed by the Circuit Court of Appeals that the jury found in accordance with such evidence, and error in submitting another overt act would not be reversible.

7. **Conspiracy ⊝⊃41—Both conspirators need not participate in overt act.**

Under Criminal Code, § 37 (Comp. St. § 10201), making it sufficient that one or more of the defendants do any act to effect the object of the conspiracy, it is not necessary that both of the defendants participate in the overt act.

---

⊝⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. Criminal law ⊆⇒97(1)—There may be constructive presence in a state, giving jurisdiction.**

    There may be a constructive presence in a state, distinct from a personal presence, by which a crime may be consummated in another state, and so be punishable there.

**9. Criminal law ⊆⇒113—Passenger within district of trial, having checked baggage containing liquor on same train, is constructively in charge thereof.**

    A conspirator, who caused trunks containing liquor to be transported on checks, and who was himself personally present in the district of the trial and on the same train with the trunks, is constructively engaged in the transportation within that district, through the railroad company as his agent.

**10. Conspiracy ⊆⇒27—Object need not be consummated.**

    To sustain a conviction for a conspiracy to transport intoxicating liquor into Georgia, it is not necessary that any intoxicating liquor was in fact transported into the state.

**11. Criminal law ⊆⇒372(6)—Evidence of similar act before conspiracy is admissible.**

    In a prosecution for conspiracy to transport intoxicating liquor into a state, evidence that one of the defendants, before the conspiracy was formed, transported such liquor into the state, is admissible as tending to prove the subsequent formation of the conspiracy and the connection of that defendant with it.

    In Error to the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

    H. L. Grayson and another were convicted of conspiracy to transport intoxicating liquors into a state where the sale therein was prohibited, and they bring error. Affirmed.

    Samuel B. Smith, of Chattanooga, Tenn. (Henry A. Newman, on the brief), for plaintiffs in error.

    W. T. Kennerly, U. S. Atty., of Knoxville, Tenn. (W. T. Kennerly, of Knoxville, Tenn., on the brief), for the United States.

    Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

    KNAPPEN, Circuit Judge. This writ is to review a conviction of plaintiffs in error (hereinafter called defendants) upon an indictment charging a conspiracy, under section 37 of the Criminal Code (Comp. St. § 10201), to violate the Reed Amendment (Act March 3, 1917, 39 Stat. c. 162, § 5, p. 1069 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a]), by transporting intoxicating liquors for beverage purposes from points in Ohio and Kentucky into the state of Georgia, the laws of which state prohibited the manufacture and sale therein of intoxicating liquors for beverage purposes. The errors relied upon sufficiently appear in the course of the opinion.

    [1] 1. The indictment, which contains a single count, charges that the conspiracy was entered into at Atlanta, Ga. Two overt acts are alleged, both being the interstate transportation by passenger train of intoxicating liquor from points in Ohio and Kentucky into Hamilton county, Tenn. (which was within the jurisdiction of the court below),

---

    ⊆⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

one of the shipments being of 5 trunks of whisky, the other of 13 cases of whisky. The indictment is assailed as defective, because the shipments constituting the overt acts alleged are not charged to have been made for beverage purposes. This criticism is not well made. While the conspiracy charged, which is the gist of the offense, was the contemplated interstate transportation of liquor for beverage purposes, it is not important that this latter purpose is omitted from the statement of the overt act, which "need not be in and of itself a criminal act; still less need it constitute the very crime that is the object of the conspiracy." United States v. Rabinowich, 238 U. S. 78, 86, 35 Sup. Ct. 682, 59 L. Ed. 1211; Goldman v. United States, 245 U. S. 474, 477, 38 Sup. Ct. 166, 62 L. Ed. 410; Pierce v. United States, 252 U. S. 239, 244, 40 Sup. Ct. 205, 64 L. Ed. 542.

[2, 3] 2. There is, we think, no merit in the objection of lack of evidence that the alleged conspiracy was entered into in Georgia. There was abundant evidence that such conspiracy was formed somewhere. As a practical proposition, it is not highly important to defendant whether the conspiracy was formed in Atlanta or somewhere else, as the venue is laid in the Eastern district of Tennessee, and the commission of overt acts there is charged. Indeed, the indictment would have been sufficient, had it stated that the place where the conspiracy was formed was unknown. Brown v. Elliott, 225 U. S. 392, 400, 32 Sup. Ct. 812, 56 L. Ed. 1136.

There was, however, in our opinion, substantial testimony tending to support a conclusion that the conspiracy was actually formed at Atlanta. Express testimony on that subject would scarcely be available, especially as no evidence was presented by defendants. The testimony showed, however, that the defendants were brothers and that they lived in Atlanta, Ga. The testimony also tended to show that Atlanta was the headquarters of their operations in an illicit liquor business. In the absence of evidence to the contrary (there was none), the natural and reasonable inference would be that the conspiracy was entered into there. There was thus ample justification for such conclusion. Shea v. United States (C. C. A. 6), 236 Fed. 97, 101, 149 C. C. A. 307; Laughter v. United States (C. C. A. 6), 259 Fed. 94, 98, 170 C. C. A. 162.

[4] 3. Defendants challenge the jurisdiction of the District Court in Tennessee, there being neither allegation nor proof that the alleged conspiracy was formed there. The Sixth Amendment to the federal Constitution guarantees to an accused the right to a trial by jury "of the state and district wherein the crime shall have been committed." Section 42 of the Judicial Code (Comp. St. § 1024), however, provides that an offense begun in one district and completed in another may be tried and punished in either district; and it is settled that in view of this section of the Judicial Code, and of section 37 of the Criminal Code, prosecutions for conspiracy may be maintained either in the district in which the conspiracy was formed or in any district in which an act was done to effectuate its object. Hyde v. Shine, 199 U. S. 62, 76, 25 Sup. Ct. 760, 50 L. Ed. 90; Hyde v. United States, 225 U. S. 347, 356, 363, 32 Sup. Ct. 793, 56 L. Ed. 1114; Brown v. Elliott, 225 U. S. 392, 400, 32 Sup.

Ct. 812, 56 L. Ed. 1136; Joplin Co. v. United States, 236 U. S. 531, 535, 35 Sup. Ct. 291, 59 L. Ed. 705; United States v. Rabinowich, supra. The cases of interstate transportation charged as overt acts, as shown by the tendency of the testimony, were these:

(a) On March 13, 1919, the two defendants carried a large quantity of whisky in suit cases on a train running from Cincinnati, Ohio, through Hamilton county, Tenn., on the way to Georgia; one defendant boarding the train at Cincinnati, the other at Lexington, Ky.—the whisky being carried as hand baggage in the stateroom of the Pullman car occupied by defendants until it was seized by officers at Chattanooga.

(b) On February 17, 1919, defendant H. L. Grayson caused to be transported five trunks of whisky, checked as baggage, into Hamilton county, Tenn., on its way to Georgia; he having control or possession of the checks therefor, issued upon interstate railroad tickets under which he and a companion were riding. These trunks were likewise seized at Chattanooga.

[5] The personal carriage by the two defendants of the whisky in the suit cases as hand baggage clearly constituted an overt act within the district of the trial; for while an offense under the Reed Amendment was not thereby committed in Tennessee, although that state was dry (United States v. Gudger, 249 U. S. 373, 39 Sup. Ct. 323, 63 L. Ed. 653), yet, as the overt act necessary to give jurisdiction need not complete the offense charged, the actual bringing of the intoxicating liquors into the district of the trial, in furtherance of the conspiracy charged, gave jurisdiction in that district because an overt act was actually committed therein—this method of carriage being clearly interstate transportation within the meaning of the Reed Amendment. United States v. Hill, 248 U. S. 420, 39 Sup. Ct. 143, 63 L. Ed. 337; United States v. Simpson, 252 U. S. 465, 40 Sup. Ct. 364, 64 L. Ed. 665. There being substantial evidence of the formation of the conspiracy as charged, and of an overt act committed within the district of the trial, defendants' motion for directed verdict was properly overruled, whether or not the trunk transportation constituted an overt act within the district of the trial. And unless for the facts that the charge of the court made either of these two methods of carriage such an overt act as would give jurisdiction, and that it does not affirmatively appear that the conviction was based upon the overt act committed by the personal transportation of the suit cases as hand baggage, there could be no occasion to consider the effect of the trunk transportation.

[6] But as the proof of the personal carriage of the liquor as hand baggage was express and undisputed, and the jury cannot be presumed to have failed to find in accordance therewith, we think we are not required to consider the trunk transportation (as an overt act committed in the same district), in view of section 269 of the Judicial Code (as amended February 26, 1919, 40 Stat. c. 48, p. 1181 [Comp. St. Ann. Supp. 1919, § 1246]), which provides that on the hearing of "any * * * writ of error * * * in any case, civil or criminal, the court shall give judgment after an examination of the entire record

before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties," thus forbidding any effective presumption of prejudice from the mere existence of error when the appellate court is able to say from the record that it is not reasonable to infer that the substantial rights of the plaintiff in error have been injuriously affected. Horning v. District of Columbia, 254 U. S. 135, 139, 41 Sup. Ct. 53, 65 L. Ed. ——; Bain v. United States (C. C. A. 6), 262 Fed. 664, 669.

[7] In any event, the trunk transportation would plainly constitute an overt act within the district of the trial unless the fact that the trunks, while on the train, were outside the personal custody of defendant H. L. Grayson, distinguishes the case from the carriage of the suit cases as hand baggage; for it is not necessary that both the defendants participate in the overt act—section 37 of the Criminal Code expressly making it enough that "one or more" of the defendants "do any act to effect the object of the conspiracy." Bannon v. United States, 156 U. S. 464, 468, 15 Sup. Ct. 467, 39 L. Ed. 494; United States v. Rabinowich, supra, 238 U. S. at page 86, 35 Sup. Ct. at page 683 (59 L. Ed. 1211).[1]

[8] It is settled that there may be a constructive presence in a state, distinct from a personal presence, by which a crime committed in another state "may be consummated and so be punishable there." In re Palliser, 136 U. S. 257, 262, 10 Sup. Ct. 1034, 34 L. Ed. 514; Horner v. United States, 143 U. S. 207, 12 Sup. Ct. 407, 36 L. Ed. 126; Burton v. United States, 202 U. S. 344, 381 et seq., 26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 392; Hyde v. United States, 225 U. S. 347, 32 Sup. Ct. 793, 56 L. Ed. 1114; Lamar v. United States, 240 U. S. 60, 36 Sup. Ct. 255, 60 L. Ed. 526.

[9] We are disposed to the opinion that defendant H. L. Grayson, who not only caused the trunks to be transported, but was himself personally present in the district of the trial, and on the same train with the trunks, must be held to have been constructively engaged in the transportation, through the railroad company as his agent, of this baggage, which normally would be carried on the train with the passenger.

[10] 4. The other errors assigned require but brief reference: (a) The proposition that there was no evidence that any whisky was shipped into Georgia for beverage purposes is not important, even if true in fact. It was not necessary to conviction that the object of the conspiracy be accomplished. Goldman v. United States, 245 U. S. 474, 476, 38 Sup. Ct. 166, 62 L. Ed. 410; U. S. v. Rabinowich, 238 U. S. 78, 35 Sup. Ct. 682, 59 L. Ed. 1211.

(b) But there was abundant room for reasonable inference that the whisky which was the subject of the alleged overt acts was shipped for beverage purposes, especially in view of the quantities, kinds, and packages in which the liquor was shipped and the clandestine methods of shipment.

---

[1] In fact, there was testimony that defendant R. V. Grayson was in Chattanooga on the day of or the day following the seizure of the trunks and the arrest of defendant H. L. Grayson in Chattanooga.

[11] (c) There was, in our opinion, no error in admitting evidence of the transportation by defendant H. L. Grayson of a large quantity of whisky, as his personal baggage on the train on which he was a passenger, from Chattanooga to Atlanta, on November 6, 1918—thus antedating the alleged date of the conspiracy by a little more than three months, and, of course, not charged as an overt act. To say the least, this transportation, and the circumstances attending it, as shown in the record, had a substantial tendency to prove the subsequent formation, of the alleged conspiracy and defendant H. L. Grayson's connection with it.

5. It results from these views that the motions to direct verdict, in arrest of judgment, and for new trial were all properly overruled, and that the record contains no reversible error.

The judgment of the District Court is accordingly affirmed.

