## Commonwealth *v.* Salyards, Appellant.

*Criminal law—Murder—Evidence.*

On an indictment for murder, it appeared that the deceased, who was a policeman, was killed by a shot from a pistol. There was evidence that the prisoner had made threats that he would shoot the deceased if he followed him. On the night of the shooting several witnesses saw the deceased following the prisoner into an alley, and almost immediately

afterward heard a shot fired, and then saw the prisoner running away. The prisoner disguised himself, immediately left the town, and was subsequently captured in a neighboring state. *Held,* that the evidence was sufficient to sustain a verdict of murder of the first degree.

*Jury—View of ground—Practice.*

In a murder trial it is not improper for the court to send the jury to view the ground where the murder was committed, without sending the prisoner and his counsel with them.

*Threats—Evidence—Murder.*

On the trial of an indictment for murder it is not improper to admit in evidence threats, made by the prisoner against the deceased eighteen months before the killing.

*Use of intoxicants by jury on murder trial—Review.*

After a verdict of murder in the first degree, an application was made for a new trial because the jury were furnished with liquor during the course of the trial, but it did not appear that there was a resulting misconduct or separation, and a new trial was refused. *Held,* to be no ground for reversal in the Supreme Court.

Argued Oct. 2, 1893. Appeal, No. 188, July T., 1893, by defendant, Charles Salyards, from judgment of O. & T. Cumberland Co., on verdict of guilty of murder of the first degree. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Indictment for murder. Before SADLER, P. J.

At the trial, it appeared that at about ten o'clock in the evening of April 8, 1893, George H. Martin, a policeman, was shot by a pistol in a narrow alley known as Grave Yard lane in the borough of Carlisle. Several witnesses testified that they saw Martin following the prisoner into the lane, and a few minutes afterwards heard a pistol shot. One witness testified that immediately after the shooting he saw a man jump over the bars into a field opposite from where the shot was fired, and run in the direction of a spring in the field. Tracks were made in the ground corresponding to the shoes worn by defendant on that evening. The prisoner was seen on the following day hiding in the South mountain. He was subsequently seen on a railroad train going south, and at Hagerstown he had his hair cut and whiskers removed. He then went to Winchester, Virginia, where he was subsequently arrested. A 38 calibre revolver was found in his pocket, and a number of 38 calibre

cartridges were in his possession. These cartridges corresponded with the one removed from the body of the deceased. It appeared that early in April preceding the tragedy Salyards exhibited a 38 calibre revolver in the presence of Mr. and Mrs. Filer and Edward Lytle, stating that if the police did not stop following him he would give them what they did not want. To Lytle he said that if Martin did not stop following him he " would give him lots of cold lead."

The court sent the jury to view the ground where the killing was done, but the prisoner and his counsel did not attend the jury in their examination.

When John B. Drawbaugh, a witness for the commonwealth, was on the stand, the commonwealth proposed to prove by him that in the fall of 1891 he had a conversation with Salyards; that Salyards said to the witness that Jesse Cart, who was then chief of police of the borough of Carlisle, was a very nice man, but if any other of the police officers would interfere with him he would give them something they did not want, or words to that effect, and that at the time George Martin was on the police force. Offer objected to by defendant for the reason that it is entirely too remote to have any legitimate bearing on the question at issue. Objection overruled, offer admitted, and bill sealed. [6]

The witness testified substantially as in the offer.

When W. E. Miller, a witness for commonwealth, was on the stand, the commonwealth offered to prove that he took the revolver produced and offered in evidence as having been taken from Charles Salyards, in Winchester, and fired out of it one of the balls that was in it at the time it was produced in evidence, fired it into a barrel of water, that then he put into the same revolver one of the cartridges found in the coat pocket of Charles Salyards, as testified to by Sheriff Graham, and fired that ball out of the same revolver into a bag of sawdust; and that he now has the balls that were thus fired in his possession, and we offer the balls in evidence, for the purpose of showing that the pistol barrel marks are similar to the pistol barrel marks on the ball found in the body of George Martin, deceased, and also for the purpose of showing that a ball, after being fired through the pistol barrel, cannot be pushed through the barrel, and for the purpose of illustrating to the jury, and using it as a comparison with the one taken from the body of Martin.

Objected to: This may have been the testimony in chief, but it is not testimony in rebuttal; and in addition to that, the comparison is for the jurors and not for the witness; and further, that the tests made as suggested in the offer, firing a ball through water, or through a bag of sawdust, would not necessarily produce on the bullet the same effects that would be produced upon it by its having been fired through a human body; the test is not similar to the case in question; and therefore the testimony is irrelevant and incompetent, and the purpose for which it is offered is illegitimate.

By the court: We think the balls fired by Mr. Miller, the witness, may be put in evidence for the purpose of comparison by the jury with the ball found in the body of Martin, and for the purpose of illustration. Exception. [7]

Defendant's counsel asked the court to withdraw from the consideration of the jury the testimony of John Drawbaugh as to a conversation alleged to have been had by him with the defendant fifteen or seventeen months ago. (1) Because Martin was not named by the defendant in the conversation alleged to have been had with Drawbaugh. (2) Because Salyards testified that he did not know Martin, and there is no contradiction of his testimony as to that. (3) The alleged conversation is too remote in point of time to be permitted in the trial for a man's life. *Answer:* This prayer is refused. Martin was a member of the police force at the time named and continued as such until the time he was killed. The threat was against the police force. The time was not too remote when taken in connection with the testimony of threats made to and in the presence of Filer, Lytle and others before and of declarations subsequent to the homicide. [9]

Defendant's counsel asked the court to withdraw from the consideration of the jury the testimony of the Funks, of Shippensburg, that they had clothing stolen Sunday night, which it is alleged was found upon the prisoner, for the reason that it is irrelevant, incompetent and as proving a distinct substantive offence, and cannot be considered by them in passing on the guilt or innocence of the defendant of the crimes charged against him in this indictment. Refused. [10]

Defendant's counsel asked the court to withdraw from the consideration of the jury the testimony of the railroad men on

the Cumberland Valley railroad and on the Western Maryland railroad as to whether or not they saw this man or one answering his description on the train that night, Saturday, the 8th of April, for the reason that it is not pertinent to the issue trying in this case. *Answer :* This point is also refused. The conductor of the Cumberland Valley railroad train was a competent witness to show the kind of baggage car that was on the midnight train of April 8th, and to testify whether Salyards was on the train or not. What weight shall be given to his testimony is for the jury. [11]

Defendant's points were as follows:

" 2. No motive for the killing of Martin by the defendant having been shown, and there being no evidence of the manner of the killing or the circumstances immediately attending it, the presumption is that the killing would not rise higher than murder in the second degree, and it devolves on the commonwealth to prove beyond any reasonable doubt that the defendant at the time of the killing had formed a clear and deliberate intention to take the life of Martin, otherwise they should not convict of murder in the first degree. *Answer :* We cannot instruct you that, as a fact, no motive for the killing of Martin has been shown. The facts we leave you to find. If you find the facts to be as stated in this point then the legal proposition therein contained is correct—that is if you fail to find a motive." [12]

" 3. It not having been shown that Martin had a warrant of arrest for the defendant, and it not having been alleged or proven that the defendant was at the time of the killing in the act of committing or perpetrating any felony, or that there was to him any known cause for his arrest, if the jury believe from the evidence in the case that the killing was done in resisting arrest, then in the absence of all other evidence of the circumstances attending the killing they would not be justified in finding a higher grade of crime than voluntary manslaughter. *Answer :* If you find the facts to be as stated in this point then it is affirmed. But we say to you that while your province is to find what the facts are, yet that in our opinion a conclusion by you that the killing of Martin was done in resisting arrest would be unwarranted. We have no recollection of any testimony that would justify such a determination by you." [13]

" 8. If the evidence of Julius and Mrs. Schraudenbaugh to the effect that on the night of April 8th, the night of the homicide, the defendant did not leave their house until ten minutes after ten o'clock, prior to which time the evidence of the commonwealth shows that Martin was shot and at which time shows he was dead, raises in the mind of the jury a reasonable doubt as to whether the defendant was the slayer of Martin, they should acquit the defendant. *Answer:* If there is a reasonable doubt that prisoner shot he should not be convicted, and this point is affirmed, if you find the fact to be that Salyards did not leave the house of Schraudenbaugh until after Martin was shot. At what time he was shot and at what time he left the dwelling of Schraudenbaugh we leave for you to determine." [14]

" 11. There is not proven in this case any lying in wait. All the evidence that shows that the person whom Martin was following and who is alleged to be Salyards was making efforts to escape, and there being no evidence showing any previous preparation for the commission of the crime on part of the defendant, or that the defendant expected to meet Martin on that night, then in the absence of all testimony as to the manner of the killing, the jury would be justified, if they find that the defendant is the person who shot Martin, in finding that the grade of crime does not rise higher than voluntary manslaughter or murder in the second degree. *Answer:* We cannot instruct you that it has not been proven in this case that there was any lying in wait, nor that all the evidence tends to show that the person whom Martin was following was making efforts to escape, or that there was no preparation on the part of the defendant for the commission of the crime, or that he expected to meet Martin that night, or that there is an absence of all testimony as to the manner of killing ; but we instruct you that, if you should so find the facts, then the point is affirmed. In our opinion the facts would warrant a conviction of murder in the first degree, and that you would be justified in finding that the evidence made out a case of willful, premeditated, deliberate killing." [15]

Verdict of murder in the first degree.

After the verdict the prisoner moved for a new trial on the ground that the jury had used intoxicating liquors during the

trial. Affidavits in support of the motion showed that wine, whisky and beer had been furnished to the jurors during the trial, but it did not appear that any misconduct or separation resulted from the use of the liquors. The court refused a new trial, and passed judgment of sentence. Defendant appealed.

*Errors assigned,* among others, were (4) in sending jury to view the ground in absence of prisoner and his counsel; (6, 7, 9–11) rulings on evidence, quoting bills of exceptions and evidence as above; (12–15) instructions, quoting them; (20) refusal of new trial.

*H. S. Stuart, J. T. Stuart* and *W. J. Shearer* with him, for appellant, cited: Turner v. Com., 86 Pa. 54; Watson v. Com., 95 Pa. 418; Act of Feb. 15, 1870, § 2, P. L. 15.

*J. E. Barnitz,* district attorney, and *M. C. Herman* for appellee, cited: Com. v. Cleary, 148 Pa. 26; People v. Douglass, 4 Cowen, 26; Com. v. Rody, 12 Pick. 511.

OPINION BY MR. CHIEF JUSTICE STERRETT, Nov. 13, 1893:

In view of the gravity of the crime of which the prisoner was convicted, we have carefully examined the record, in connection with the stenographer's notes of testimony, and are fully satisfied that no substantial error was committed in the trial. The testimony was quite sufficient to show that the death of George H. Martin was caused by a pistol-shot wound, inflicted by some one with intent to kill; and, it also tended strongly to prove that the prisoner was the guilty agent. All the facts and circumstances connected with the shooting, including the presence of the prisoner at or about the time it occurred, his previous threats, immediate flight, arrest in a neighboring state, etc., all point to him as the person who intentionally and feloniously fired the fatal shot. All these facts and circumstances, if true, are consistent with his guilt, and at the same time irreconcilable with any other reasonable theory, arising out of the testimony. Without undertaking to summarize the testimony or to refer specially to any part of it, we have no doubt it was proper for the consideration and determination of the jury; and to them it was submitted by the

learned president of the oyer and terminer in a clear and comprehensive charge, which appears to be free from any error of which the prisoner has any just reason to complain. Guided by his explicit instructions as to what was necessary to justify a verdict of guilty, the jury must have found that the fatal shot was fired by the prisoner, without any justification or excuse, and with specific intent to take the life of deceased. As already intimated, the evidence was quite sufficient to justify the jury in finding all the facts necessary to constitute murder of the first degree.

It would serve no useful purpose to notice the specifications of error in detail. We have given to each and all of them that consideration which their importance to the prisoner demands, and have failed to discover therein, or in any part of the record, any error that would justify us in reversing the judgment.

The judgment of the court of oyer and terminer of Cumberland county is therefore affirmed; and, to the end that said judgment may be executed, it is ordered that the record be forthwith remitted to said court.