## GAYON v. McCARTHY, UNITED STATES MAR-SHAL FOR THE SOUTHERN DISTRICT OF NEW YORK, ET AL.

APPEAL FROM AND ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 540. Argued January 6, 1920.—Decided March 1, 1920.

Engaging another to go to Mexico to join revolutionary forces, under promise of a commission and probable reimbursement for expenses, is a "retaining," within the meaning of § 10 of the Criminal Code. P. 177.

Evidence *held* sufficient to show probable cause, and sustain an order of removal.

Affirmed.

THE case is stated in the opinion.

*Mr. William S. Bennet* with whom *Mr. A. M. Wattenberg* was on the brief, for appellant and plaintiff in error.

*Mr. Assistant Attorney General Stewart*, with whom *Mr. W. C. Herron* was on the brief, for appellees and defendants in error.

MR. JUSTICE CLARKE delivered the opinion of the court.

The appellant, Gayon, was indicted in the Southern District of Texas for conspiring (§ 37 of the Criminal Code) with one Naranjo, of San Antonio, Texas, and with one Mendoza, of Laredo, Texas, about January 1st, 1919, to hire and retain Foster Averitt, a citizen of the United States, to go to Mexico, there to enlist in military forces organized in the interest of Felix Diaz, then in revolt against the Government of Mexico, with which the United

States was at peace, in violation of § 10 of the Criminal Code, as amended May 7, 1917, (40 Stat. 39, c. 11).

Gayon was arrested in New York, and, after a full hearing before a Commissioner of the United States, was held subject to the order of the District Court for his removal to Texas.

Thereupon, by petition for writs of *habeas corpus* and *certiorari*, the case was removed to the District Court for the Southern District of New York, and, upon a hearing on a transcript of the evidence before the Commissioner, that court discharged the writ of *habeas corpus* and entered an order that a warrant issue for the removal of the appellant to Texas. An appeal brings this order here for review.

The principles and practice applicable to this case are abundantly settled: *Greene* v. *Henkel*, 183 U. S. 249, 261; *Beavers* v. *Haubert*, 198 U. S. 77; *Hyde* v. *Shine*, 199 U. S. 62, 84; *Tinsley* v. *Treat*, 205 U. S. 20; *Haas* v. *Henkel*, 216 U. S. 462, 475; *Price* v. *Henkel*, 216 U. S. 488, 490; *Hyde* v. *United States*, 225 U. S. 347; *Brown* v. *Elliott*, 225 U. S. 392; *Henry* v. *Henkel*, 235 U. S. 219.

Of many errors assigned only two are argued, viz: That the court erred in holding: (1) That the acts committed by the appellant "of which there was any evidence before the Commissioner" constituted a crime under § 10 of the Penal Code, and (2) that the evidence before the Commissioner showed probable cause for believing the defendant guilty of the crime charged in the indictment.

By these assignments of error the correct rule of decision is recognized, that if there was before the Commissioner or District Court evidence showing probable cause for believing the defendant guilty of having conspired with Naranjo or Mendoza, when either was in the Southern District of Texas, to hire or retain Averitt to go to Mexico to enlist in the insurgent forces operating under General Diaz against the Mexican Government, the order of the District Court must be affirmed.

The evidence before the Commissioner, carried to the District Court, may be summarized as follows:

The Government introduced the indictment and, with the admission by Gayon that he was the person named therein, rested. This established a *prima facie* case in the absence of other evidence. *Tinsley* v *Treat*, 205 U. S. 20, 31, and cases cited.

Thereupon the testimony of the accused and of one Del Villar was introduced by appellant, and that of Averitt by the Government, which we condense into narrative form:

For five years before the arrest, Del Villar, a political exile from Mexico, had maintained offices in New York, from which he had conducted a systematic propaganda in the interest of Felix Diaz and against the Mexican Government.

The accused, Gayon, is a Mexican citizen, and during several administrations prior to that of Carranza had served as consul for the Mexican Government at Roma, Texas, and at other places within and without the United States. For about two years he had been secretary to Del Villar and for some time prior to his arrest was in the joint service and pay of Del Villar and General Aurelio Blanquet, the latter then in Mexico serving with the forces of Diaz.

Naranjo was editor and publisher of a newspaper at San Antonio, Texas, called "Revista Mexicana" (Mexican Review), which was opposed to the established Mexican Government and favorable to the revolutionists operating in the interest of Diaz.

On December 12, 1918, Gayon wrote from New York to Naranjo at San Antonio to secure an advertisement in the Review for "my work 'El General Blanquet,'" saying: "There are some reasons that you may know in the next few days why I want a big circulation of the book," asking if he might send some copies to be sold at the newspaper

office, and concluding, "I will await your letters hoping to give you good news in my next letter."

On December 23, 1918, Gayon wrote Naranjo, addressing him as "My dear Friend," and saying that he had received his letter of the 18th instant. In this letter a discussion of the sale of his book "El General Blanquet" is followed by comment on the activities of other persons, in which he discourages new projects and urges joining "with the National Union Committees," which he states had already passed the embryonic state and now constitute a reality. He concludes: "God grant us, now that we are on the threshold of success, we may leave aside our obstinate custom of projecting, and go ahead to produce results exclusively."

On January 14, and again on January 21, 1919, he addressed Naranjo as "My dear Friend" and discussed further advertising and circulating of his book.

This correspondence makes it clear enough that Gayon, although in New York, in December, 1918, and January, 1919, was in close association with Naranjo, and that the two were actively engaged in promoting opposition to the established Mexican Government.

On January 5, 1919, Foster Averitt, an American citizen, whose home was in Texas, called at the office of Gayon, and what passed between them is derived from the testimony of the two, as follows:

Averitt had recently resigned from the United States Naval Academy at Annapolis and, being without employment, says that he called at the office of Gayon, for the purpose of securing, if possible, a position in Mexico or Central America as an engineer. He was wearing his uniform as midshipman of the United States Navy and he first showed Gayon some official papers, which the latter did not read, and then said that he was of the United States Navy, and that he must go at once to Mexico to see Generals Diaz and Blanquet personally. He did not give

any reason for desiring to see these men but asked for letters of introduction to them, which Gayon refused until he could confer with Del Villar. Averitt returned the next day and, after discussing with Gayon conditions in Mexico, the location of the several armed forces near the border, and whether he should go by sea to Vera Cruz or overland, he again left for the day. On returning the next day he received from Gayon two letters, one addressed to Naranjo, at San Antonio, and one to "General Aurelio Blanquet, General Headquarters, Mexico."

Gayon had no knowledge of or acquaintance with Averitt before his first call at his office and he did not present any letters of introduction, but in the letter to Naranjo, Gayon introduced him as "undertaking a trip to Mexico on special mission to Generals Felix Diaz and Aurelio Blanquet," and requested that he "supply him the necessary information to enable him to make his trip as quickly as possible."

The letter which he gave to Averitt addressed to General Blanquet opens with this paragraph:

"The bearer, Mr. Foster Averitt, Marine Guard of the United States, will inform you about the reasons for his trip and of the work we are undertaking here. I kindly request from you, after meeting Mr. Foster [sic], to be good enough to introduce him to General Felix Diaz, as he wants to take up some matters with both of you."

The remainder of the letter explains how he had given publicity to "the recent successful arrival" of the General in Mexico and the motives inspiring the movement of reorganization under the leadership of General Diaz. It predicts early recognition by our Government of the belligerency of the Diaz insurgents and urges the General to write as often as possible to enable "us to continue our campaign of propaganda."

Supplied with these letters, Averitt straightway went to San Antonio and presented his letter to Naranjo who,

.after some conferences with him, gave him a letter to General Santiago Mendoza, at Laredo, on the border. This letter was presented to Mendoza and through him arrangements were made for Averitt's crossing into Mexico with two or three others, but they were arrested by customs guards and the proceedings we are considering followed.

In the interviews in New York there was suggestion of payment of expenses and a commission for Averitt, but Gayon, saying that the furnishing of either would violate the neutrality laws of the United States, told him there would be no difficulty in his getting a commission from General Blanquet on his arrival in Mexico and the last thing he said to him when leaving was "that he expected that he should be at least a Colonel when he saw him again down there." He told him it might be possible to have his expenses made up to him when he arrived in Mexico, and, as a matter of fact, he received $15 from General Mendoza at Laredo.

The statute which Gayon is charged with violating provides that "whoever, within the territory or jurisdiction of the United States . . . hires or retains another . . . to go beyond the limits or jurisdiction of the United States with intent to be enlisted . . . in the service of any foreign . . . people" shall be punished as provided. And the overt acts charged in the indictment are; that Gayon delivered to Averitt at New York a letter addressed to Naranjo, and at the same time gave him instructions with respect to presenting it and impliedly promised Averitt that upon his arrival in Mexico he would be given a commission in the army of General Blanquet; that at the same time he delivered to Averitt a letter addressed to General Blanquet, who was then in Mexico in command of revolutionary forces; that Averitt visited and held conferences with Naranjo who gave him a letter to Mendoza, at Laredo, in the Southern District of

Texas; and that Averitt, under instructions received from Naranjo, called upon and conferred with Mendoza at Laredo and with him arranged to enter Mexico with others, with intent to join the forces of Diaz under General Blanquet.

While the narration of what took place between Gayon and Averitt does not show a hiring of the latter in the ordinary sense of the word, yet, when taken with the conduct of Averitt in going immediately to Texas, and in attempting to cross into Mexico, plainly, it tends to show that Gayon retained Averitt in the sense of engaging him to go to Mexico, that he was induced to enter into that engagement by the promise that he would be given a commission in the forces of Diaz when he arrived there and that he would probably be reimbursed for his expenses.

There was also evidence tending to show that by communication and concerted action between Gayon, Naranjo and Mendoza, Averitt was induced to go from New York to the border and would have succeeded in reaching Mexico and joining the insurgent forces but for the vigilance of the United States officers who arrested him. The evidence also is that Mendoza conferred with Averitt and acted in promotion of the conspiracy when in the Southern District of Texas, thus establishing the jurisdiction of the court to which the indictment was returned, under *Hyde* v. *United States,* 225 U. S. 347, and *Brown* v. *Elliott,* 225 U. S. 392.

The word "retain" is used in the statute as an alternative to "hire" and means something different from the usual employment with payment in money. One may be retained, in the sense of engaged, to render a service as effectively by a verbal as by a written promise, by a prospect for advancement or payment in the future as by the immediate payment of cash. As stated long ago by a noted Attorney General, in an opinion dealing with this statute:

"A party may be retained by verbal promise, or by invitation, for a declared or known purpose. If such a statute could be evaded or set at naught by elaborate contrivances to engage without enlisting, to retain without hiring, to invite without recruiting, . . . it would be idle to pass acts of Congress for the punishment of this or any other offence." 7 Ops. Atty. Gen. 367, 378, 379.

This discussion of the record makes it sufficiently clear that there was substantial evidence before the Commissioner and the court tending to show that § 10 of the Criminal Code had been violated and that there was probable cause for believing the appellant guilty of conspiring with Naranjo and Mendoza to compass that violation, as charged in the indictment, and therefore the order of the District Court must be

*Affirmed.*