## ROWE v. BOYLE, U. S. Marshal. *

(Circuit Court of Appeals, Ninth Circuit. October 18, 1920. Rehearing Denied December 6, 1920.)

No. 3489.

1. **Criminal law ☯242(7)—Evidence in proceeding for removal of defendant to another district for trial.**

In a proceeding for return of a prisoner to another district for trial, as a fugitive from justice, introduction of an indictment found against him and his admission that he is the person named therein establishes a prima facie case.

2. **Habeas corpus ☯113(12)—Finding of probable cause for return of fugitive presumed correct.**

On appeal from a judgment denying a writ of habeas corpus to one ordered by a commissioner returned to another district for trial as a fugitive from justice, in the absence of the evidence on which the commissioner and the court acted, it must be assumed that their finding of probable cause was sustained by competent evidence.

3. **Post office ☯48(4)—Indictment for using mails to defraud sufficient.**

An indictment for using the mails to defraud and for conspiracy to commit such offense *held* sufficient, where it charged that defendants devised a scheme to sell stock of a copper company by means of representations known to be false and fraudulent, and that they used the mails in sending out letters and circulars containing such representations.

4. **Post office ☯48(4)—Essentials of indictment for using mails to defraud.**

It is not necessary, in an indictment for using the mails to defraud, under Criminal Code, § 215 (Comp. St. § 10385), that the scheme itself should appear to be fraudulent on its face, or to allege that any one has actually lost money or been defrauded.

5. **Criminal law ☯242(4)—In proceedings for removal of fugitive to another district for trial, sufficiency of indictment is not an issue.**

The validity of an indictment is not a question in issue in proceedings for removal of a person arrested as a fugitive from justice to another district for trial, but is for determination by the court in which it was returned.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Habeas corpus by George F. Rowe against John M. Boyle, United States Marshal. From an order discharging the writ, petitioner appeals. Affirmed.

Rowe appeals from an order discharging a writ of habeas corpus and directing his removal to the jurisdiction of New York for trial. Complaint was made before a commissioner at Seattle that Rowe and Tjosevig and others willfully and feloniously committed certain offenses against the laws of the United States as alleged in the indictment (certified copy of which is part of the complaint), presented to the United States District Court in New York, charging said persons in the first five counts with violations of section 215 (Comp. St. § 10385), and in the sixth count with violation of section 37 (Comp. St. § 10201), of the Criminal Code.

The complaint alleged issuance of a bench warrant and return by the marshal for the Southern district of New York to the effect that he could not find Rowe and Tjosevig within his jurisdiction, and that they were fugitives from justice and were within the Northern division of the Western district of the state of Washington. At the hearing before the commissioner at Seattle the defendant moved to dismiss upon the ground that the complaint did not

state facts sufficient to show probable cause for the removal of the defendant. This motion was denied, and upon evidence introduced the commissioner found that probable cause had been shown to believe that defendant had committed the offense as charged in the complaint, and ordered defendant to be held in bail to appear before the proper District Court in New York. Thereafter appellant surrendered himself to the United States marshal and filed in the District Court for the District of Washington petition for a writ of habeas corpus and writ of certiorari to review the findings of the commissioner. An order to show cause was granted. After due return by the marshal, hearing was had by the District Court, and the writ of habeas corpus was discharged, and order of removal was made. Defendant Rowe appealed.

Appellant questions the sufficiency of the indictment to state a cause of action, and argues that the evidence was insufficient to warrant an order of removal, and that the District Court erred in refusing to allow the defendant to introduce the testimony of a certain witness.

Walter B. Allen, of Seattle, Wash., for appellant.

Robert C. Saunders, U. S. Atty., and Ben L. Moore, Asst. U. S. Atty., both of Seattle, for appellee.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

HUNT, Circuit Judge (after stating the facts as above). [1] After the government introduced the indictment and Rowe admitted that he was the person named therein, a prima facie case was established. Gayon v. McCarthy, 252 U. S. 171, 40 Sup. Ct. 244, 64 L. Ed. 513.

[2] Whether the evidence considered by the District Court showed probable cause for believing defendant appellant guilty of having devised and intended to devise the scheme and artifice to defraud, as charged in the indictment, and whether defendant for the purposes of executing such scheme, and attempting so to do, unlawfully used the mails as alleged, or whether defendant appellant, together with others, conspired to violate section 215 of the Penal Code (section 10385), as charged, cannot be decided, because the evidence taken before the commissioner and the District Court upon the question of the existence of probable cause is not annexed to the petition, and is not part of the proceeding before the District Court upon application for writ of habeas corpus. In the petition for the writ petitioner sets forth a summary of the evidence of a number of witnesses who testified before the commissioner; but the bill of exceptions does not contain the evidence heard by the commissioner, and there is no certification by the District Judge that the summarized statement in the petition is correct, or that it includes all of the evidence upon which the order of removal was made; nor is there any stipulation to the effect that such summary is a full and correct statement of the evidence presented to the court. In Greene v. Henkel, 183 U. S. 249, 22 Sup. Ct. 218, 46 L. Ed. 177, upon an appeal from an order denying an application for a writ of habeas corpus, the Supreme Court said:

"We must assume, in the absence of the evidence taken before the commissioner and approved by the District Judge, that their finding of probable cause was sustained by competent evidence, bearing in mind, also, that on this proceeding the court would not in any event look into the weight of evidence on that question."

[3] The appellant urges that the indictment is wholly insufficient. Reduced to narrative, the facts as stated are:

That the Tjosevig-Kennecott Copper Company was a Washington corporation; that Rowe and others, having devised and intended to devise a scheme to defraud certain named persons of money and property by means of false representations, did, for the purpose of executing said scheme and artifice, place and cause to be placed in the United States mails a certain letter thereinafter described; that defendants induced a firm of stockholders, Willis & Co., of New York, to sell and offer to the "victims" 500,000 shares of stock of the Tjosevig-Kennecott Copper Company through advertisements, pamphlets, and letters mailed by Willis & Co., and its agents to the "victims," and that it was the purpose of the defendants to offer the 500,000 shares of stock and other stock by advertising and the use of the mails, and to induce "victims" to buy the stock for cash, holding out that the money received from the sale of stock would be used to develop the property of the Copper Company, defendants well knowing such representations to be false and fraudulent. The defendants were to hold out to the "victims" that Howarth & Co., of Idaho, had bought 50,000 shares of stock and paid therefor $25,000, which representations were false and known to be false, and were to represent to the "victims" that the entire proceeds from the sale of stock, less commissions to brokers, would go into the treasury and would be used to develop the property.

They were also falsely and fraudulently to represent to the "victims" that the Copper Company owned 22 mining claims in Alaska free of all debt, and that stock offered for sale was treasury stock, and that there were about 800 tons of copper ore on the property ready for shipment, and that trial shipments showed the ore to contain $19.20 silver to the ton, and that the Copper Company owned a rich copper property, which had been investigated by well-known mining engineers, who had reported that the possibilities of the property were second, if not equal, to the well-known Kennecott Copper mines in Alaska, and that the property had long been known to contain vast quantities of copper ore; that the work already done had uncovered and made ready for shipment about 1,600,000 pounds of high-grade ore, and that the property was only 7 miles from the railroad, and that an aerial tramway would be constructed from the property to the railroad; that the property was opposite the famous Bonanza copper mines, and that the geological formation was identical with that of the Kennecott, "known as the world's richest copper mine," and that one of the claims contained a great body of glance, which would run from 35 per cent. to 70 per cent. copper; that 800 tons of this high-grade ore were ready for shipment, and that a conservative estimate of the ore bodies uncovered showed copper to the value of $2,000,000; that the plan was to mine and ship the ore on a large scale, and for this purpose 500,000 shares of treasury stock were offered for public subscription at $1 per share, and that the funds realized from the sale of the stock were to be used to build a tramway and to erect a mill and construct accommodations for men, and that the stock subscriptions as well were to be used to erect a mill and to build a tramway, in order that shipping of

an enormous tonnage would be commenced, and that the stockholders would thus be enabled to participate in the profits made from the metal; that 500,000 shares had been subscribed for, and that it was not probable that further offer of treasury stock would be made, and that, based upon amount of ore already available for mining and shipment, the stock of the company should be worth at least $2 per share, and that with additional equipment and further development the shares would be worth from 10 to 20 times their price of $1 per share.

It is charged that the foregoing representations were false and known to be false. Part of the scheme charged was that the "victims" should be fraudulently and falsely told by defendants that the Copper Company owned 440 acres of highly mineralized ground, and that several million dollars worth of high-grade ore was available for mining and shipment, and there would be an active and strong market for the stock of the company in New York, and that $5 a share might be expected within a few weeks, and that, on the then-present showing of the properties, fully $4,000,000 worth of copper was in sight, and the intrinsic value of the shares was about $3, and that assays showed the ore was similar to that of the Bonanza mine, and that certain named engineers had made favorable reports on the property.

It is alleged that defendants mailed circulars to certain named persons, the circulars, which are set forth, containing statements as to the property and stock, and that they mailed letters to certain persons, advising them that the property should prove as valuable as the Kennecott, and that the shares should be worth at least $15 or $20, if the most reasonable expectations should prove true.

The sixth count charges a conspiracy to violate section 215 of the Criminal Code, and alleges that a part of the conspiracy was that the defendants were to procure a certain named firm of stockbrokers to offer to the "victims" 500,000 shares of stock through advertisement, pamphlets, and letters, to be mailed to the "victims," and that they were to represent that the money received from the sale of the stock should be used to develop the property, all of which was known to be false and fraudulent to defendants. Further allegations of conspiracy charge that defendants were to do the things referred to in the allegations of the counts charging the use of the mails in the scheme to defraud. The representations are alleged to have been known by defendants to be false and fraudulent. The overt acts under the conspiracy charge are that, in pursuance of the plan and to effect the object thereof, there were certain conversations had, and that letters which are set forth were written and mailed, and that checks for certain alleged sums were received.

The indictment sufficiently charges these essentials: That a scheme to defraud was intentionally devised by defendants; that, to effect or to attempt to effect the object of the scheme, defendant placed or caused to be placed mail matter in a post office of the United States. United States v. Young, 232 U. S. 155, 34 Sup. Ct. 303, 58 L. Ed. 548; Linn v. United States, 234 Fed. 543, 148 C. C. A. 309.

[4] It is not necessary, in an indictment under section 215 supra, that the scheme itself appear to be fraudulent on its face (McConkey v.

United States, 171 Fed. 829, 96 C. C. A. 501; Looker v. United States, 240 Fed. 932, 153 C. C. A. 618), or that it be alleged that any one has actually lost money or been defrauded. See above cases, and Weeber v. United States (C. C.) 62 Fed. 740; United States v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516. The charge of conspiracy is also sufficient.

[5] Finally, if there were any doubt as to the validity or sufficiency of the indictment, the proper court for the resolution of any such question is that in which the indictment has been returned, and not that where proceedings in removal are instituted. Stallings v. Splain, 253 U. S. 339, 40 Sup. Ct. 537, 64 L. Ed. 940; Haas v. Henkel, 216 U. S. 462, 30 Sup. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112.

The order appealed from is affirmed.

Affirmed.