**BLAIR et al. v. UNITED STATES.**

Circuit Court of Appeals, Eighth Circuit.
April 4, 1929.

No. 8286.

Before KENYON, Circuit Judge, and FARIS and SANBORN, District Judges.

FARIS, District Judge. Appellants were each convicted upon trial, on an indictment having two counts for the possession of intoxicating liquor in the Indian country, and for possession of a still, contrary to the provisions of the National Prohibition Act (27 USCA), and sentenced to the penitentiary and to pay certain fines. They have appealed in the conventional mode.

The offenses occurred on a small, unnamed island in the Arkansas river, at a point some four miles south of Ponca City. At the locus in quo, the Arkansas river flows nearly due south, but with a slight southeasterly trend. At this point, Osage county is on the east side of the river, and Kay county is on the west side thereof. Osage county is in the Northern District of Oklahoma, while Kay county is in the Western District.

On the trial, a map was offered, which showed parts of Kay county and parts of Osage county, lying both north and south and east and west of the small island above mentioned, as the place at which the liquor and still were found in possession of defendants. West of this small island, there is a large island in the bed of the Arkansas river, which is marked on the map, as lot 10 of Sec. 14, T. 25, R. 2. This large island so marked on the map, as lot 10, is shown by a deed, from the principal chief of the Osages, to have been allotted to one Elnora Quinton, a duly enrolled member of the Osage Tribe of Indians. This allotment was made in June, 1909. Lot 11 of Sec. 14, T. 25, R. 2, as shown on this map, and which lot seems to include, among other lands, the small island, is shown by a deed, likewise executed by the principal chief of the Osages, to have been allotted on June 5, 1909, to one Fred Moncravie, a duly enrolled member of the Osage Tribe of Indians. The latter deed was duly approved by the Commissioner of Indian Affairs and by the Secretary of the Interior. But one witness was asked as to the location of this small island; his answer was, that it is in Osage county. This large island extends north, i. e., up the river, some half a mile above the small island, and about an equal distance south thereof.

Much of the record is taken up by testimony of some eight or ten witnesses, who deposed touching the width and depth of the water on the east and west sides, respectively, of this small island, as of recent times and as of the time of the trial. Of course, we are in nowise aided by such inquiry. No

Ed. Crossland, of Tulsa, Okl. (J. E. Smith and Blake & Crossland, all of Tulsa, Okl., on the brief), for appellants.

John M. Goldesberry, U. S. Atty., of Tulsa, Okl.

evidence was offered by the defendants, upon any phase of the case, save as to the respective widths and depths of the two streams of water which now run on the east and west sides, respectively, of the small island. In short, it may be said that defendants offered no evidence whatever competent and relevant to any of the issues involved in the case. The sole defense below was that the evidence is not sufficient to show the venue; that is, to show that the offense occurred, as charged, in Osage county, Okl. The above matter of alleged insufficiency of the evidence to show venue is here urged for reversal, as also is the ruling of the court sustaining an objection of *defendants,* to certain language of the court, that the court would rule, as a matter of law, that the place of commission of the offenses is in Osage county, and an alleged error in the charge to the jury, in the matter of defining the meaning of the term, "main channel of the Arkansas River."

It is, of course, fundamental that venue must have been proven as a fact in the case. For here, if the acts took place in Kay county and not in Osage county, the case was triable in the Western District and not in the Northern District, and so the court which tried it would have had no jurisdiction to do so. But there is nothing particularly recondite or sacrosanct about venue. Touching the origin of the word, and its present legal meaning, this was said in the case of State ex rel. McAllister v. Slate, 278 Mo. loc. cit. 576, 214 S. W. 87, 8 A. L. R. 1226:

"In the very twilight of the trial jury's origin, men of the vicinage who were witnesses, or recognitors, as well as jurors, came up to the King's trial courts from the identical neighborhood in which the crime was committed for which accused was to be tried. They were brought up by a writ, which writ from the command that it contained, came to be called a 'venire facias'; hence the word 'venire,' which from being used as the name of the writ which brought the jurors up has come to be used sometimes in the books as the name collectively of the jurors, or those brought up by the writ. Whether we derive the word 'venue' from the French as the anglicized spelling of the past participle of 'venir,' to come, and thus it means '(those who) come,' or from the modern French substantive, meaning 'a coming,' or whether it is derived from the Latin 'vicinitatum,' meaning 'of the neighborhood,' shortened by usage to 'visinetum,' and again in law Latin to 'visnetum,' whence 'visne,' which in early days was used and written interchangeably for 'venue' (10 Bacon's Abr. 364), we need not stop to ascertain, for the matter is one obscured by thick doubt. From meaning the place from which the jurors came, in course of time it came to mean the place to which the jurors came, i. e., the place of trial. According to the universal trend of modern authority 'venue' now means 'the place of trial for an action.' (40 Cyc. 11)."

But venue may be proven like any other fact; therefore it may be found from circumstantial evidence. Tinney v. State, 111 Ala. 74, 20 So. 597; Bloom v. State, 68 Ark. 336, 58 S. W. 41; People v. Kamaunu, 110 Cal. 609, 42 P. 1090; Brooke v. People, 23 Colo. 375, 48 P. 502; McCune v. State, 42 Fla. 192, 27 So. 867, 89 Am. St. Rep. 227; Robson v. State, 83 Ga. 166, 9 S. E. 610; Bland v. People, 4 Ill. (3 Scam.) 364; Com. v. Costley, 118 Mass. 1; State v. Chamberlain, 89 Mo. 129, 1 S. W. 145; Com. v. Salyards, 158 Pa. 501, 27 A. 993. It may be shown by the testimony of any competent witness in the case, who resides in the county or vicinage, Waller v. People, 209 Ill. 284, 70 N. E. 681; People v. Manning, 48 Cal. 335; Malone v. State, 116 Ga. 272, 42 S. E. 468; State v. Meyer, 135 Iowa, 507, 113 N. W. 322, 124 Am. St. Rep. 291, 14 Ann. Cas. 1; Davis v. State, 134 Wis. 632, 115 N. W. 150; Carroll v. State, 121 Ga. 197, 48 S. E. 909, and so, in the above-cited cases, it was shown, and thus, in actual practice, it is usually shown. It may be shown by indicating, or pointing out the locus in quo, on a map identified as a correct map of a county, or of any particular section of the trial court's jurisdiction. Kraimer v. State, 117 Wis. 350, 93 N. W. 1097. By the great weight of the ruled cases, venue, even in a criminal case, need not be proved beyond a reasonable doubt. 13 Encyc. of Evidence 931, and cases cited from eleven states pro and two states contra. But the learned trial judge included venue, as among the things in the case, which should be proved beyond a reasonable doubt; so the point is not before us here.

We think it was a bit of circumstantial evidence admissible, and for the consideration of the jury, that the place where the crimes occurred, namely, lot 11 of section 14, in township 25, range 2, of Osage county, Okl., and lot 10 of said section 14, which is the large island, had been conveyed by deeds, executed by tribal officers of the Osage Indians, and approved by the Secretary of the Interior.

Regrettably, most of the record is given over to the proof of a fact wholly beside the mark, namely, the whereabouts, i. e., whether

east or west, of the main channel of the Arkansas river, as of the date of the offenses, of the small island on which the offenses occurred. So far as this method of determining the boundary of Osage county cuts a figure in the case, it was necessary to prove where the main channel was with relation to this small island, as of the time when the territory within Osage county was segregated from the territory within Kay county. This segregation fixed the boundary regardless of the subsequent vagaries of the Arkansas river. Commissioners of Land Office of State of Oklahoma v. United States (C. C. A.) 270 F. loc. cit. 113, and cases cited; Missouri v. Kentucky, 11 Wall. 395, 20 L. Ed. 116. Osage county is coextensive with the territory or land area fixed by the Act of Congress of June 5, 1872 (17 Stat. 228), in establishing the Osage Indian Reservation. Section 8, art. 17, Cons. of Okl. By the above act, the boundary of this reservation, and therefore of Osage county here in question, was fixed as the "main channel of the Arkansas River"; so the question is where the main channel was, when so fixed; not where it is now. True it is that a water boundary may be changed by accretion, but the change so wrought as to a river is practically self-limited. Avulsion does not change it (Missouri v. Kentucky, 11 Wall. 395, 20 L. Ed. 116); and accretion, though it might have pushed the boundary of the large island (and therefore the boundary of Osage county) farther west, would yet in no way have operated to put the large island in Kay county, if it was in the Osage Indian reservation, on and after June 5, 1872. If the large island is in Osage county, obviously the small island east of it is bound to be in Osage county. We think there was sufficient evidence to go to the jury on the question of venue, and that the jury correctly resolved this question.

■ In the course of the trial, the government offered a witness to prove that, during such witness' residence in Osage county, these two islands have been treated and considered as being in Osage county. *Defendants* objected to the question. The court sustained this objection, saying in effect, in doing so, that he considered the question of whether the island was in Osage county a pure question of law, and that he would so hold. Counsel for defendants wholly agreed then with the view of the court, and so expressed himself, and, of course, then took no exception, because he so agreed and because his objection had been sustained. Later, when the trial judge came to charge the jury, he

had changed his view as to the nature of the question, and correctly left it to the jury to find as a fact in the case whether the place of the offenses was in Osage county or in Kay county. The trial court could judicially notice that the "main channel of the Arkansas River" is the boundary of Osage county at this point, but it could not notice whether the small, unnamed island was east or west of such channel on June 5, 1872, even if, as seems doubtful, it was then in existence. Obviously, the situation presents no reversible error.

■ The final contention of appellants is, that the court erred in a comment made to the jury as to the legal effect, or reason for the offering of certain deeds of allotment conveying the two islands to enrolled Indians. The facts were that the jury had, after deliberating for a time as to their verdict, come into court for further information as to certain exhibits. The exhibits inquired about were the allotment deeds; at least, the trial judge so understood the inquiry, and said to the jury, "As I remember, the exhibits establish, this island was allotted to one of these Indians, the small island, and the large island to another Indian. Of course, the government evidently had in mind that the land was within Osage county by making the allotments." Thereupon counsel for defendants excepted, saying, "I want to except to the remarks of the court. They are not supported by the evidence." The court then added to his statement to the jury, this, "Just a minute. Of course, as I instructed you, one of the elements of the offense is whether it was situated in Osage County, Oklahoma. You will determine under the evidence that you heard during the trial of the case where this island is located."

Defendants' counsel was, of course, in error in giving as his reason for the exception that the remarks of the court were not supported by the evidence. Clearly, the statement by the court of the legal effect of the two deeds was not error. They were written instruments, and he had the right to tell the jury the legal effect of them; that is to say, that one of them conveyed the small island to one Indian allottee, and the other conveyed the large island to another Indian allottee. His comment, however, as to what he deemed was held in mind when the government so made the allotments, i. e., in effect, that it deemed the land to be within Osage county, should have been omitted. But, at once, he in effect withdrew this statement implicitly, though not expressly, by telling the jury that they must determine from the

evidence adduced on the trial, whether the island was or was not in Osage county. We think the situation does not, in view of the amendment of February 26, 1919, to the Statute of Jeofails (section 391, title 28 U. S. C. [28 USCA § 391]), constitute reversible error; a fortiori, since the matter of evidence about which the comment was made was wholly cumulative. There was other sufficient evidence in the case to prove venue, especially when, as here, there was no competent, countervailing evidence whatever tending to show that the island in controversy was in Kay county, and not in Osage county. ■ Some objection is urged to the charge, but it refers to a matter which is not vital, but only incidental, and so, since no objection was made and no exception taken to the charge, we are not bound to notice it. It follows that the case ought to be affirmed, which accordingly we order.