SANDROFF et al. v. UNITED STATES.

No. 10549.

United States Court of Appeals
Sixth Circuit.

June 1, 1949.

Hugh McD. Ritchey, Cincinnati, Ohio (Hugh McD. Ritchey, Henry H. Chatfield, Nelson Schwab, Jr., Cincinnati, Ohio, and Wm. Henry Gallagher, Detroit, Michigan, on the brief), for appellants.

Vincent Fordell, Detroit, Michigan (Thomas P. Thornton, Vincent Fordell and Frank X. Norris, Detroit, Michigan, on the brief), for appellee.

Before SIMONS, MARTIN and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

Appellants Sandroff and the Thomas Paper Stock Company, of which he was president, have appealed from a second conviction of unlawful conspiracy to violate paragraph (b) of section 205 of the Emergency Price Control Act of 1942, as amended, 50

U.S.C.A.Appendix, § 925(b), and section 1347.10 of Maximum Price Regulation No. 30, as amended, issued by the Price Administrator of the Office of Price Administration pursuant to the authority vested in him by the Act of Congress and by Executive Order No. 9250, 50 U.S.C.A.Appendix, § 901 note, issued by the President of the United States.

Upon the second trial jury's finding of guilt, the corporate defendant was by judgment of the court fined ten thousand dollars, the same fine imposed at the first trial, as was likewise the individual defendant. But Sandroff was sentenced to imprisonment for a year and a day at the second trial as against two years at the first.

This court reversed the former judgments of conviction and sentence and remanded the case for a new trial. Sandroff v. United States, 6 Cir., 158 F.2d 623. The direct ground of reversal was the trial judge's error in shutting off cross-examination of a Government witness, Charles Ginns, a co-conspirator, upon the question of promised or expected immunity and as to why he and his son, Jack Ginns, who, though named as co-conspirators in the indictment, had not been included as defendants therein. Upon the second trial, Charles Ginns testified that no immunity had been offered or promised him by the Government.

It was directed in our opinion that, upon retrial, the district court should explain to the jury the pertinent provisions of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., and especially should read and explain to the jurors the language of the pertinent portion of section 1347.10 of Maximum Price Regulation No. 30. The appellants contend that there was inadequate compliance with this mandate. It is insisted that the court did not instruct the jury that an essential element of the crime charged was contemplated dealing in "commercially packed wastepaper." We think the trial judge complied with our directions and charged the jury correctly.

After reading certain sections of the Acts of Congress, he read to the jury section 1347.10 of Maximum Price Regulation No. 30 in its exact language: "(a) Every person who has been required under Revised Price Schedule No. 30 to keep records for inspection by the Office of Price Administration shall preserve such records for so long as the Emergency Price Control Act of 1942 shall remain in effect. (b) Every person making purchases or sales of *commercially packed waste paper* [italics added] shall keep for inspection by the Office of Price Administration for so long as the Emergency Price Control Act of 1942 shall remain in effect, complete and accurate records of each purchase or sale of waste paper showing the following: (1) Date of purchase or sale. (2) Name and address of the buyer or seller. (3) Grade of waste paper purchased or sold. (4) Quantity of each grade purchased or sold. (5) Prices paid or received. (6) Warranties, if any, given or received. Such records shall set forth separately the f. o. b. point of shipment price, the origin and destination of the shipment, the means of transportation used, the amount of the transportation charge, and any other amounts paid or received in connection with such sale." Section (c) of the regulation was then read to the jury.

The judge explained that the phrase "commercially packed" is defined in the regulation as follows: " 'Commercially packed' means packed in machine compressed bales or by an optional method of packing where such method is allowed in the definition of a grade." He then added: "I don't think it is necessary for me to tell you what a bale is. All of you have seen bales of hay, bales of paper, and bales of clothes. There have been a lot of clothes drives; I believe a lot of you have been connected with clothes drives, [the jurors were all ladies] and you have had the clothes baled to keep them more compactly together; and the optional method would probably rest in the mind and at the discretion of the person who was to do the shipping."

█ Considering the charge in entirety, which embraced a reading of the indictment and the pertinent regulation with the foregoing explanation of it, the jury was sufficiently informed that the conspiracy charged related essentially to dealings in "commercially packed" waste paper. Moreover, no exception was taken to the charge on the point now made.

■ Appellants insist that the trial court erroneously charged the jury that Maximum Price Regulation No. 30 required Central Waste Material Co. to keep copies of the invoices covering the transactions in question. The point is not well grounded. What the court charged was that with respect to the regulation requiring records to be kept, copies of the invoices of the Central Waste Material Company are records if the jury found that they were kept in the ordinary course of business, as the law requires, were made at the time of the transaction or within a reasonable time thereafter, and if it "was customary that such records be made, and in business, by the people who kept them." The judge earlier had charged that the defendants would be guilty if they joined in a conspiracy to falsify the invoices of the Central Waste Paper Company so as not to show the true, correct, complete transactions. We find no merit in appellant's argument. Charles Ginns testified that appellant Sandroff arranged with him to invoice the paper to Sandroff's company at ceiling prices and to collect in cash on the side from his company ten dollars a ton above the ceiling for corrugated paper and six dollars a ton above the ceiling for newspaper.

This arrangement was carried out. Therefore, the consummated conspiracy was to have a false record of sales shown in the form of invoices at ceiling prices while the seller was actually to be paid in cash the agreed amounts in excess of the ceiling prices. On each shipment a copy of the invoice was sent to the Thomas Paper Company for its records, the original invoices being retained by the Central Waste Material Company. The invoices apparently were the only records kept by the Central Waste Material Company covering sales of waste paper to Sandroff's company. The proof is positive that Sandroff knew the invoice-records were falsified, inasmuch as he personally ordered payments in excess of the ceiling prices at the end of each week either to Charles Ginns or to his son, Jack. Moreover, as has been stated, this fraudulent method was agreed upon at the inception of the conspiracy.

Paragraph (b) of section 1347.10 of Maximum Price Regulation No. 30 requires that complete and accurate records of purchases and sales of commercially packed paper be kept for inspection by the office of Price Administration, but does not specify the type or form of record to be kept.

The statement which was made in our former opinion is again applicable: "From the evidence in the case, it is deducible that Ginns' regular manner of handling waste paper was to put the material into a 'baler', that is, a machine for compressing paper into bales; that Sandroff knew how Ginns handled his paper; that all the invoices were, as a matter of fact, for ceiling prices for *commercially packed waste paper;* and that Sandroff, having knowledge of this fact, made the over-ceiling payments. All this would seem to bring the transactions within the regulations pertaining to 'commercially packed waste paper'. From the foregoing review of the testimony, it would appear also that a reasonable inference can be drawn from all the circumstances of the case that Sandroff had guilty knowledge of the falsification of the records of transactions between his company and Ginns' Detroit firm. There was, therefore, substantial evidence upon which to submit the issues of fact to the jury. The district court committed no [reversible] error in denying the motion of appellants for a directed verdicts." 158 F.2d 627, 628.

■ In our former opinion, we detailed the evidence and will not repeat. There is no material difference[a] or discrepancy in the evidence received at the two trials. Appellant Sandroff testified at the first trial, but did not take the stand or offer any evidence upon the retrial. His failure to testify at the second trial, now under review, left no missing link in the chain of circumstances which brought about his second conviction by jury verdict. The district court properly denied his motion for a directed verdict of acquittal.

Appellants assert that "the record fails to establish the essential requirements of venue and jurisdiction in the district court"; and that the trial court erroneously failed to charge the jurors that "in or-

der to convict they must find that at least one alleged overt act in furtherance of the conspiracy had occurred within the trial district." They contend that no overt act in furtherance of the object of the conspiracy to falsify records was *alleged* and *proved* by competent evidence to have been committed within the trial district, the Eastern District of Michigan, Southern Division.

■ A mere reading of the indictment impels rejection of the argument that the indictment contains no allegation that an overt act was committed in the trial district. The indictment avers: "And the Grand Jurors aforesaid do further present that in furtherance of said unlawful agreement, confederation, combination and conspiracy, and for the purpose of effecting and accomplishing the unlawful purposes as hereinbefore charged the defendants and co-conspirators, at the times and places hereinafter set forth did commit the following overt acts, that is to say: I. That on or about the 8th day of October, A.D., 1943, at Detroit, Michigan, in the Southern Division of the Eastern District of Michigan, and within the jurisdiction of this Honorable Court, co-conspirator Charles Ginns shipped and caused to be shipped a carload of waste paper to and for the account of the said defendants Alvin E. Sandroff and Thomas Paper Stock Company, a corporation."

Then follow, in the indictment, averments of four separately numbered overt acts of like character as to shipments made or caused to be made in Detroit on other specified dates. In our judgment, the averments of these overt acts committed in the trial district were sufficient to sustain jurisdiction when followed by adequate supporting proof. See opinion of Associate Justice Vinson (now Chief Justice of the United States) in United States v. Offutt, 75 U.S.App.D.C. 344, 127 F.2d 336. See also Stephens v. United States, 9 Cir., 41 F. 2d 440, 443. It has been held in the circuits that venue may be established by circumstantial evidence. George v. United States, 75 U.S.App.D.C. 197, 125 F.2d 559, 563, 564; White v. United States, 83 U.S.App. D.C. 174, 167 F.2d 747, 748; Blair v. United States, 8 Cir., 32 F.2d 130; Tuckerman v. United States, 6 Cir., 291 F. 958, 967.

■ The supporting proof was adequate to establish venue in the Eastern District of Michigan. There is substantial evidence in the record that the object of the conspiracy originally entered into by Sandroff and Ginns in Chicago was to cause falsified records of sales of commercially packed waste paper to be made; that the means of consummating the object of the conspiracy was to invoice at ceiling prices each shipment of paper from Detroit to appellant in Chicago with the understanding that appellant would pay to Ginns agreed sums of cash in excess of the invoice prices shown; that this was done; and that the paper was shipped from Detroit to Chicago. The shipments of paper were essential overt acts to effectuate the object of the conspiracy.

In the circumstances of the case, there is no apparent error in the court's charge in relation to overt acts. The jury was correctly charged: "An overt act is some act done to effect the object of the conspiracy. The gist of the conspiracy is the agreement to effect an unlawful end, but before the offense is completed a party to the conspiracy must do some overt act. Without proof of an overt act by one or more of the conspirators there can be no conviction under this indictment. An overt act which completes the crime of conspiracy to violate federal law is something apart from the conspiracy itself and is an act to effect the object of the conspiracy, and need not necessarily be a criminal act, nor a crime that is the object of the conspiracy, but must accompany or follow the agreement and must be done in furtherance of the object of the agreement. The overt act must be one that is done following the complete agreement or conspiracy. It is an outward act done in pursuance and in manifestation of an intent or design and looking toward accomplishment of the crime. In determining what constitutes an 'overt act' toward accomplishment of a crime, each case must depend largely upon its particular facts and inferences which the jury may reasonably draw therefrom.

An overt act alone, without an unlawful agreement, is not a criminal conspiracy. As I said, there need be but one overt act, joined in by one or more of the conspirators."

The astute trial lawyer who represented appellants did not even take exception to that portion of the charge wherein the jury was instructed that an overt act in furtherance of the conspiracy was essentially to be proved to justify conviction. The point now made, though without merit, has not been seasonably made.

Section 42 of the Judicial Code, 28 U.S. C.A. § 103,[1] provides: "When any offense against the United States is begun in one judicial district and completed in another, it shall be deemed to have been committed in either, and may be dealt with, inquired of, tried, determined, and punished in either district, in the same manner as if it had been actually and wholly committed therein."

In Shea v. United States, 6 Cir., 236 F. 97, 101, it was declared that in view of the statutes the rule is now settled that "prosecutions for conspiracy may be maintained either in the district in which the conspiracy was entered into, or in any district in which an act was done to effectuate the object of the conspiracy." Hyde v. Shine, 199 U.S. 62, 76, et seq., 25 S.Ct. 760, 50 L.Ed. 90, and later decisions of the Supreme Court were cited. The statement was reiterated in Grayson v. United States, 6 Cir., 272 F. 553, 555, certiorari denied 257 U.S. 637, 42 S.Ct. 49, 66 L.Ed. 409.

In Costal v. United States, 6 Cir., 13 F.2d 843, it was held to be unnecessary to the jurisdiction of the court that the conspiracy be formed within the district, if an overt act in furtherance of it was committed therein. Cf. Gayon v. Mc-Carthy, 252 U.S. 171, 40 S.Ct. 244, 64 L.Ed. 513; Kott v. United States, 5 Cir., 163 F. 2d 984, bears analogy here. The Court of Appeals held that where the evidence showed that a conspiracy to violate the Emergency Price Control Act by the sale of liquor in excess of the ceiling price was formed in New York but that an overt act was committed in the western district of Louisiana in the receiving of an over-ceiling price by one of the conspirators, the United States District Court for the Western District of Louisiana had jurisdiction and it was not an abuse of discretion on its part to deny the motion of defendant for removal of the case to the New York district.

The Ninth Circuit Court of Appeals held in Grigg v. Bolton, 53 F.2d 158, certiorari denied 285 U.S. 538, 52 S.Ct. 311, 76 L.Ed. 931, that a defendant charged with forming a conspiracy in one district and with an overt act in furtherance thereof in another may be removed for trial in the district where the overt act was committed, even though he had not been previously within that district.

In American Tobacco Co. v. United States, 6 Cir., 147 F.2d 93, 120, it was pointed out that there is sufficient compliance with the requirement that the trial must be held in the district where the crime was committed when it is charged that some of the acts in furtherance of the conspiracy were performed in the forum district and the evidence adduced at the trial shows this to have been the fact.

It seems clear that the argument of appellants that the essential requirements of jurisdiction and venue in the district court for Eastern Michigan have not been established is without merit and must be rejected.

Appellants make the point that the trial court failed to follow the "mandatory" provisions of Rule 32 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., prior to sentencing them.

Immediately after the jury had returned its verdict of guilty and the jurors had been polled, the judge ordered the convicted individual defendant to "step up to the bar" and when he had done so, thus addressed him: "Alvin Sandroff, you have been found guilty of the charge stated in the indictment filed by the Government." Sentence of imprisonment for one year and one day and a fine of ten thousand dollars was then pronounced against Sandroff,

---

[1] See Revised Criminal Code, 18 U.S.C.A. § 3237.

and a fine of ten thousand dollars was imposed upon the defendant corporation of which he was president. The judge said: "You will be committed to the custody of the Marshal. Anything further?" The United States Attorney responded: "Nothing from the Government, if your Honor please." The judge then addressed Sandroff's attorney: "You want to say anything, Mr. Gallagher?" "No, so far as the verdict of the jury is concerned," was the answer. The defense attorney then moved for a stay of proceedings and for the fixing of bond pending motion for a new trial and perfection of appeal. The court fixed bond at $2,500, the same amount as on the previous appeal, and allowed ten days for the filing of a motion for a new trial.

■ Criminal Procedure Rule 32(a) provides: "(a) Sentence. Sentence shall be imposed without unreasonable delay. Pending sentence the court may commit the defendant or continue or alter the bail. Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment."

While it would have been in appropriate conformity with the above rule had the district judge asked appellant Sandroff whether he desired to make a statement, it would appear from his inaction that Sandroff did not wish to do so. Though the judge posed the query, "Anything further?", neither appellant nor his attorney spoke up to the effect that Sandroff wished to be heard or to present information in mitigation of punishment. We cannot say that appellant was not afforded an opportunity to make a statement. There is nothing to indicate that he was shut off. That the judge possessed the quality of mercy is indicated by the fact that he imposed imprisonment for only half the time which his predecessor pronounced at the first trial.

Finally, appellants aver that the district court's conduct of the trial and the charge to the jury were prejudicial to the defendants, in that "apart from the substantive errors involved, they must necessarily have created in the minds of the jury the impression that the court considered the defendants guilty." From our scrutiny of the record, we regard this as an unfair and unwarranted charge against the district judge, who evinced patient and painstaking care to preside and to rule fairly and impartially and to indicate to the jury no opinion of his own as to the guilt or innocence of the accused.

The judgments of conviction and sentence are affirmed.